## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BOCOCK'S EX'OR AND ALS. V. ALLEGHANY COAL· AND IRON COMPANY.

FEBRUARY 17th, 1887.

Absent, LEWIS, P.

1. CORPORATIONS—*Charter and by-laws—Notice of.*—Persons dealing with a corporation are affected with notice of the provisions of its charter, constitution, and by-laws. *Haden* v *Ins. Co.*, 80 Va. 691.

2. IDEM—*Case at bar.*—N. and two others contracted for sale of land to A. C. & I. Co., through D., whom they took to be its authorized representative, and incurred expense in perfecting the title with a view to conveyance on payment of the price in cash, according to contract. The company refused to take the land, and denied D.'s authority to bind it by his contracts. N. and his associates brought their bill for specific performance against the company, D. and others, but they entirely failed to prove D.'s authority to bind the company.

HELD:

> The plaintiffs. were affected with notice of the corporation's mode under its by-laws of authorizing agents to bind it by purchases of land, and dealt with D. at their peril, and cannot be heard to complain of the company's refusal to recognize his purchase.

· Appeal from a decree of the chancery court of the city of Richmond, rendered July 9th, 1883, in the suit therein pending wherein Thomas S. Bocock, executor of N. F. Bocock, deceased, O. R. Bocock and Peter A. Forbes, who sue for the benefit of D. A. Parrack, were complainants, and the Alle-

ghany Coal and Iron Company, H. C. Parsons, G. McNeill, Murrillo Spaulding and F. B. Deane were defendants.

The object of the suit was to compel the specific performance on the part of the defendant, the Alleghany Coal and Iron Company, of a contract alleged to have been entered into by said defendant with the complainants for the purchase of a tract of land known as the "Pratt farm," situated in Buckingham county, Virginia, containing 774 acres, and on which it was supposed there were valuable deposits of iron ores. The active parties to the transaction were Thomas S. Bocock, executor of N. F. Bocock, deceased, and O. R. Bocock, widow of N. F. Bocock, and Peter A. Forbes, the vendors, and F. B. Deane, the vendee. The contract was entered into on the 14th of June, 1881, and by it said tract of land was sold at the price of $2,500. In evidence of the sale, a contract in writing of that date was signed by said vendors and by "F. B. Deane for himself and his associates."

By this contract, "Deane and his associates" reserved the right of sixty days within which to consult and determine whether or not they would consummate the purchase. N. F. Bocock, deceased, had by his will prescribed different terms of sale for his real estate from the terms whereon this sale was made; a decree was obtained at a special term of the circuit court of Buckingham county, in a suit pending in said circuit court for the settlement of said N. F. Bocock's estate, ratifying this sale, and directing a conveyance of the land to Murrillo Spaulding, whom the purchasers designated as the grantee. And the vendors having been informed that the purchasers had determined to take the land, executed a good and sufficient deed conveying the land to Spaulding, and delivered the same to J. D. Horsley, Esq., who was acting in this transaction as the attorney of the purchasers. During the entire negotiation, not only the complainants, but also Deane and Hors-

ley seem to have understood that the real purchaser of the land was the Alleghany Coal and Iron Company, or if that company was not, then H. C. Parsons, the then president, and G. McNeill, an agent of the company were, individually, the real purchasers. And in this supposition, the complainants were sustained by the evidence of both Deane and Horsley. So, of course, they all looked to the company, or to Parsons and McNeill for the payment of the purchase money, and were greatly surprised, as they say, when Deane and Horsley informed them by letter in October, 1881, that "H. C. Parsons and G. McNeill, of the Alleghany Coal and Iron Company, had refused to ratify Deane's action as their agent in the purchase of the 'Pratt farm.'"

After various ineffectual efforts, in which the complainants were earnestly backed by Deane, the agent, and by Horsley, the attorney, to induce the company, or Parsons and McNeill, to recognize the purchase and pay the purchase money, the complainants, on 3d of April, 1882, instituted this suit for specific performance. In their bill they set forth the foregoing facts, and aver that the company was the real purchaser; that Deane was its duly authorized agent, and that he was so recognized by Parsons, the president, and by McNeill, the agent of the company, and that Horsley was its duly authorized attorney, and as such had advised its agents at every step of the transaction; and that Parsons was its president and McNeill was its *factotum*, and that, through those two, the company transacted all, or nearly all, its business, and that they had held out to the public both Deane and Horsley as the representatives of the company, which thereby became responsible for their actions in making this purchase. And the complainants prayed for specific performance thereof by the company. But denying all dealing with, or knowledge of Spaulding in the transaction, the complainants added, that

if in the progress of the suit it should turn out that Parsons and McNeill, or either of them, were the real purchasers of the land, they then should be granted the same relief against them, or either of them.

To this bill the company filed its demurrer and answer. In its answer the company positively denied that it had purchased this land, and that either Deane, Parsons, or McNeill was authorized in any way to purchase land for it; that Parsons, as its then president, had, under the charter, constitution or by-laws of the company, any authority whatever to buy land, or to bind the company by any contract so to do; and filed with its answer a copy of its constitution and by-laws. It also denied that it knew of the purchase until long after the contract was made, when a claim was made against it for the purchase money, and denied that Horsley was authorized in any way to represent the company in the transaction.

The defendant, Parsons, also answered. He denied all knowledge of either this land or of the contract until the latter was filed with the bill. He likewise denied that he was a partner with Deane either in this or in any other transaction; and that he ever knew of the transfer of the contract to Spaulding, or of the delivery of the deed to Horsley, or that he ever wrote to the latter about this matter. And he denied, too, that either Deane or McNeill was an agent of the company during the time that he was its president; and that he, as such president, or individually, ever directed, authorized or approved said purchase. He (Parsons) also denied that the company had ever given him any authority to buy land for it; and that it was within the scope of his official authority as its president, to make such purchases, without express authority. In fine, this answer denies every material allegation of the bill and explains certain letters filed therewith as having no reference to the matters in the bill set forth; and also

explains certain conversations testified to in some of the depositions taken in the cause in behalf of the complainants. The letters referred to were all from McNeill, and did commit him, either as authorizing or as approving the purchase made by Deane; and one of them, which was addressed to Deane, stated the terms on which, and the purposes for which, Deane had been employed by Parsons, the president of the company, and so far from being authorized to purchase land for the company, Deane, as its employee was to receive one hundred dollars a month (crediting the company with so much of the time as might be devoted to his own business), for devoting his whole time and attention to the development of the properties and business of the company, and promoting its interests in every way in his power.

The depositions of Deane and of Horsley did establish the fact that McNeill had either authorized or approved the purchase made by Deane and the conveyance of the land to Spaulding, but failed to implicate either the company or Parsons with the transaction.

The constitution of the company, which was adopted May 22, 1880, provides by Article IV, that "the president shall be the official head of the company, and shall sign all contracts for the company, and cause the same to be attested by the secretary, who shall affix thereto the corporate seal;" and by Article VII, that "the board of directors shall have power to make by-laws and other rules and regulations touching the business of the company, not inconsistent with, or repugnant to, the charter or this constitution. And inasmuch as it is anticipated by the stockholders that the business of the company will be large, its transactions numerous, and may extend over a large area of country, special powers are hereby conferred upon the board of directors to make any contract and to do and perform any act on the part of the company which

the stockholders might be able to authorize in any general or special meeting, and the board of directors may select any agent or agents, and clothe them with such powers as they may see fit."

And at a meeting of the stockholders held May 29, 1880, H. C. Parsons was elected president, and W. M. Barnum secretary and treasurer of the company, and the action of the board of directors was approved, whereby it appointed "H. M. Alexander, F. O. French, G. M. Bartholomew, and H. C. Parsons (*ex officio* member of all committees), and clothed them with full powers of the board, when the board is not in session."

The cause having been duly matured by personal service on the resident, and by an order of publication duly executed against the absent defendants, it was heard on the bill, the demurrer and the answers, and the general replication thereto, and the exhibits filed and the depositions taken therein, and on the 9th of July, 1883, the circuit court, hearing the cause on the merits, decreed that the complainants' bill be dismissed as to the defendants, the Alleghany Coal and Iron Company, H. C. Parsons and Murillo Spaulding, and that Peter A. Forbes, out of his own estate, O. R. Bocock, out of her own estate, and Thomas S. Bocock, out of the estate of his testator, in his hands not yet administered, pay to the last-named defendants their costs, &c.; and being of opinion that George McNeill was the real purchaser of the land in the proceedings mentioned, under the contract filed with the bill, decreed in favor of the complainants against him that he specifically perform the said contract by paying to them the sum of $2,500, with interest thereon at the rate of six per centum per annum from the 13th July, 1881, until paid, and their costs, upon their making and filing with the papers in the cause, a good and sufficient deed conveying to him the said land.

From this decree the complainants obtained from one of the judges of this court an appeal and writ of *supersedeas.*

*R. T. Hubard* and *George J. Hundley,* for the appellants.

*Johnston, Williams & Boulware,* for the appellees.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

After a pains-taking examination of the record, we are of opinion that there is no error in the decree complained of, and that the same should be affirmed. The burden of proof was on the appellants. The allegation of the bill that the defendant company was the real purchaser of the land sold by the appellants on the 14th of June, 1881, to "F. B. Deane and his associates," was positively denied by the answer of the defendant company, and the appellants wholly failed to prove the allegation.

By the constitution of the company, as we have seen, only its board of directors, or the executive committee, composed of four of its members, was authorized to make contracts to bind the company, or to select an agent or agents to make such contracts. There was no pretence of evidence in the cause to establish that said contract of sale was made either by the board, or by its executive committee, or by any agent appointed by either, or that said contract, having been made by Deane without due authority, was validated by any subsequent ratification of said board or committee. The appellants, dealing, as they claimed to have done, with this corporation through Deane, were bound to take notice of its charter and by-laws. This court, *per* Hinton, J., in *Bockover* v. *Life Association of America,* 77 Va. 91, quoting from the Supreme Court of the United

States, in *Rolfe* v. *Rundle*, 13 Otto, 222, said: "Every person dealing with a corporation is bound to take notice of its constitution, by-laws and ways of doing business." And to the same effect is the opinion of Fauntleroy, J., speaking for the court in *Haden* v. *Mechanics Fire Association*, 80 Va. 691.

The appellants, then, were bound to ascertain whether or not Deane had been armed with authority to bind the defendant company by his contract of purchase, by either its board of directors or by the executive committee of the board; and not having done so, they dealt with him as such supposed agent *at their own peril*, and cannot be heard now to complain of the refusal of the company to assume the responsibility of Deane's unauthorized contract.

The same is true of the allegation—if the faltering and equivocal alternative proposition to the effect that, "if in the progress of the cause, it should turn out that McNeill and Parsons, or either of them, were the real purchasers of the said land, then the same relief is prayed for against them, or either of them, as is asked for against the *Alleghany* Coal and Iron Company, can properly be denominated an allegation, then such allegation is emphatically denied by the answer of the respondent, Parsons. Nor did the appellants adduce sufficient evidence to overcome the effect of this answer.

Deane deposed that he had been employed by Parsons as president, at $100 a month, to devote his whole time to the development of the company's properties and to promote its interests, and that Parsons referred him to McNeill for instructions as to his duties. Surely this did not empower Deane to make a contract binding Parsons to buy this land. All else testified to by Deane, is as to conversations with, and as to directions oral and written given him by, McNeill. These could not bind Parsons without his consent or subsequent ratification, though they do implicate McNeill, and show that he made Deane his dupe.

Horsley deposed that he went to Richmond, saw there, at the office of the Alleghany Coal and Iron Company, G. McNeill, explained to him the difficulties concerning the title to the "Pratt farm," and that *McNeill* said he would have to see Parsons before deciding whether or not to take the farm, and requested him to call the next day; that he did call again the next day, and that *McNeill* said that they had determined to take the farm, and requested the deponent to go and have the sale confirmed. It was McNeill who said all this; and when Parsons was not present. It is all merely hearsay. There is nothing in the record to show that McNeill was authorized to represent Parsons in any contract for the purchase of anything. Deane confirms Horsley's testimony. But all this, and there is nothing else, is wholly insufficient to overcome the responsive denials in the answer of Parsons.

Moreover, we have here the case of a written contract for the sale of land, entered into by the appellants (the vendors) on the one part, and on the other part by "*F. B. Deane and his* associates." Who the "associates" were is not disclosed by anything in the record. The contract thus entered into was assigned or transferred to Murillo Spaulding, and the decree of the circuit court of Buckingham obtained ratifying and confirming the sale, and directing the conveyance to be made to Spaulding, and the deed was made accordingly and delivered to Horsley, the company's attorney, who evidently acted under the mistaken supposition that Deane was authorized to buy the land for the company. Yet, in the face of all this, the contract solemnly confirmed to Spaulding is sought to be specifically executed against other parties who are not proved to have had any knowledge of or connection with it. Surely, in the light of the doings of the active parties to the contract, as disclosed by the record, if Deane had any associates, they were McNeill and Spaulding. We do not, however, mean to

intimate, nor does the record permit it, that Deane improperly entered into collusion with McNeill and Spaulding, or with either of them, though it is manifest that he was overreached by McNeill, and did exceed his authority as employee of the company. Moreover, after carefully looking into every fact and circumstance disclosed by the record, the conclusion is inevitable that in their reckless anxiety to effect the sale of their land the appellants negligently failed to ascertain the identity of the parties with whom they were conducting the transaction and the authority of Deane to act for those whom he described as "his associates." This being so, they must bear the consequences of their own default. But it is evident they made out their case against McNeill, though they failed as to the other defendants. For these reasons we are of opinion that the decree complained of is free from error, and must be affirmed.

Decree affirmed.