ADDISON B. JOHNSTON ET AL. V. MILWAUKEE & WYOMING INVESTMENT COMPANY.

FILED NOVEMBER 19, 1895.    No. 7367.

1. **Principal and Agent:** CORPORATIONS. One dealing with the agent of a business corporation, in a matter relating to its business operations and not involving its corporate functions, is not charged with notice of its by-laws.

2. ——: ——. Therefore, the apparent authority of such agent cannot be extended or restricted by such by-laws in the absence of actual notice thereof.

3. ——: CUSTOM AND USAGE: EVIDENCE. Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority. Whether or not an act is within the scope of an agent's apparent authority is to be determined under the foregoing rule as a question of fact from all the circumstances of the transaction and the business.

4. ——: ——: ——. Evidence of such apparent authority is not restricted to proof of general custom or to proof that the agent had previously performed similar acts to the knowledge of the principal. The nature of the business, usage not amounting to a general custom, and the fact, if it exists, that the principal is at a great distance and the agent apparently entirely in charge of the business, may in proper cases be, among other things, elements for consideration.

ERROR from the district court of Merrick county. Tried below before SULLIVAN, J.

See statement in opinion and a former report in 35 Neb., 554.

*John L. Webster,* for plaintiffs in error:

A manager of a live stock company would have author-

ity to sell its cattle without any provision in the charter or by-laws creating the office of manager. (*Hamm v. Drew*, 83 Tex., 77.)

Every person dealing with a corporation is bound to take notice of its by-laws as well as of its articles of incorporation. (*Bockover v. Life Association of America*, 77 Va., 91; *Bocock v. Alleghany Coal & Iron Co.*, 82 Va., 920; *Relfe v. Rundle*, 103 U. S., 222.)

The presumption is that an agent in charge of property at a point remote from the home office of the company is clothed with authority to transact all business touching such property. (*Rathbun v. Snow*, 123 N. Y., 343; *Hamm v. Drew*, 83 Tex., 77; *Whitaker v. Kilroy*, 70 Mich., 638.)

When the plaintiff company made Adams its agent in charge of its property in Wyoming, it necessarily clothed him with the functions of a general agent, and gave him apparent authority to sell the property and should not now be heard to say that the powers of Adams were special, and not general. (*Grafius v. Land Co.*, 3 Phila. [Pa.], 447; *Lee v. Pittsburg Coal & Mining Co.*, 56 How. Pr. [N. Y.], 376; *Duncan v. Hartman*, 143 Pa. St., 595; *Spangler v. Butterfield*, 6 Colo., 356; *Sacalarias v. Eureka & P. R. Co.*, 18 Nev., 155; *Adams Mining Co. v. Senter*, 26 Mich., 73; *Ceeder v. Loud Lumber Co.*, 86 Mich., 541; *State v. Heckart*, 49 Mo. App., 280.)

The sale of the cattle by Adams was within the scope of his apparent authority. (*Atlantic & P. R. Co. v. Reisner*, 18 Kan., 458; *Louisville, E. & St. L. R. Co. v. McVay*, 98 Ind., 398; *Barnett v. Gluting*, 3 Ind. App., 421; *Over v. Schiffling*, 102 Ind., 196; *Badger Lumber Co. v. Ballentine*, 54 Mo. App., 180; *Austrian v. Springer*, 94 Mich., 343; *Banner Tobacco Co. v. Jenison*, 48 Mich., 459; *National Furnace Co. v. Keystone Mfg. Co.*, 110 Ill., 427; *Louisville Coffin Co. v. Stokes*, 78 Ala., 372; *Talladega Ins. Co. v. Peacock*, 67 Ala., 253.)

In support of an argument in favor of the contention
35

that the Milwaukee & Wyoming Investment Company ratified the sale, reference was made to the following authorities: *Hughes v. Ins. Co. of North America*, 40 Neb., 627; *Cook v. Tullis*, 18 Wall. [U. S.], 338; *Starks v. Sikes*, 8 Gray [Mass.], 609; *Dispatch Line v. Bellamy Mfg. Co.*, 12 N. H., 205; *Planters Bank v. Sharp*, 4 S. & M. [Miss.], 75; *McMahan v. McMahan*, 13 Pa. St., 376; *Ogden v. Marchand*, 29 La. Ann., 61; *Charles v. State*, 11 Ark., 389; *United States Express Co. v. Rawson*, 106 Ind., 215; *Goss v. Stevens*, 32 Minn., 472; *Ruggles v. Washington County*, 3 Mo., 496; *Shoninger v. Peabody*, 57 Conn., 42; *Russ v. Telfener*, 57 Fed. Rep., 973; *Persons v. McKibben*, 5 Ind., 261; *Perkins v. Boothby*, 71 Me., 91; *Mayor v. Ray*, 19 Wall. [U. S.], 484; *Taylor v. Conner*, 41 Miss., 722; *First Nat. Bank of Las Vegas v. Oberne*, 121 Ill., 25; *Baer v. Lichten*, 24 Ill. App., 311; *Thompson v. Peck*, 115 Ind., 512; *Moriarity v. Stofferan*, 89 Ill., 528; *Harding v. Parshall*, 56 Ill., 219; *Nichols v. Shaffer*, 63 Mich., 599; *First Nat. Bank of Trenton v. Badger Lumber Co.*, 54 Mo. App., 327; *Southern Oil Works v. Jefferson*, 70 Tenn., 581; *Gelatt v. Ridge*, 117 Mo., 555; *Long v. Osborne*, 59 N. W. Rep. [Ia.], 14.

*J. W. Sparks* and *George H. Noyes*, contra:

The plaintiff at the time of the commencement of this suit was the owner and entitled to the possession of the cattle replevied, and was entitled to a verdict, unless the defendants procured a valid title by purchase from Adams. (*Levi v. Booth*, 58 Md., 305.)

The burden of proof to establish that Adams had been held out by the plaintiff as possessing an apparent authority greater than his real authority, and as having an authority to sell the cattle, rested upon the defendants. (*Baltimore & Ohio Employees Relief Association v. Post*, 122 Pa. St., 579; *Hays v. Lynn*, 7 Watts [Pa.], 525; *American Life*

*Ins. & Trust Co. v. Schultz*, 82 Pa. St., 46; *Bond v. Pontiac, O. & P. A. R. Co.*, 62 Mich., 643.)

The mere fact that the plaintiff had entrusted the care, management, and possession of the cattle to Adams, gave him no authority to sell them. Nor did the directions to ship the cattle to commission merchants, to be sold by them in the market, give any authority to him to make a sale. (*Warder v. Rublee*, 42 Minn., 23.)

The defendants could not base any right in this action upon the ground that they dealt with Adams as having apparent authority to sell the cattle, unless it appeared from the evidence that they knew of facts giving him such apparent authority, and acted upon such appearances in the transaction of purchasing the cattle. (*People v. Bank of North America*, 75 N. Y., 561; *Eckart v. Roehm*, 43 Minn., 271.)

Although authority on the part of an agent may, in proper cases, be implied from the words and conduct of the parties, or from the circumstances of the case, yet the extent of the authority so implied cannot exceed the necessary and legitimate effect of the facts from which it is inferred, but must be limited to the performance of like acts under like circumstances. The authority, if implied at all, can only be implied from facts. (*Kane v. Barstow*, 22 Pac. Rep. [Kan.], 588.)

Unless the jury found from a fair preponderance of the evidence, that Adams had performed acts of a character similar to the acts performed by him as disclosed by the evidence prior to the sale of the cattle, and that the plaintiff, after knowledge thereof, ratified such prior similar acts, they would not have been justified in finding that Adams possessed the apparent authority to sell the cattle. (*Eckart v. Roehm*, 43 Minn., 271; *Graves v. Horton*, 38 Minn., 66; *People v. Bank of North America*, 75 N. Y., 561; *Reynolds v. Continental Ins. Co.*, 36 Mich., 131; *McKindly v. Dunham*, 55 Wis., 515; *Kane v. Bartow,*

22 Pac. Rep. [Kan.], 588; *Banks v. Everest*, 35 Kan., 687.)

If there was anything known to defendants at the time, likely to put a reasonable business man upon inquiry as to the authority of Adams, then it was their duty to inquire how far the acts of Adams were in pursuance of the limitations put upon his authority by the plaintiff. If the defendants failed or neglected to make such inquiries, they could not claim to be protected in dealing with Adams as having apparent authority to sell. (*Hurley v. Watson*, 68 Mich., 531; *Rust v. Eaton*, 24 Fed. Rep., 830.)

The company gave Adams no implied or apparent authority to sell. (*Bickford v. Menier*, 107 N. Y., 490; *Dodge v. McDonnell*, 14 Wis., 553*; *New York Iron Mine v. First Nat. Bank*, 39 Mich., 644; *Coquillard's Admr. v. French*, 19 Ind., 274; *Billings v. Morrow*, 7 Cal., 171; *Hodge v. Combs*, 1 Black [U. S.], 192; *Hawtayne v. Bourne*, 7 M. & W. [Eng.], 595; *Hampton v. Mathews*, 14 Pa. St., 105; *Swazey v. Union Mfg. Co.*, 42 Conn., 556.)

The rights of the parties being determined as of the date of the commencement of the suit, proof of what happened subsequently thereto is unavailing to show ratification. (*Powell v. Henry*, 96 Ala., 412; *Wittenbrock v. Bellmer*, 57 Cal., 12.)

The following authorities were also cited upon the question of ratification: *Flagg v. Flagg*, 39 Neb., 229; *Pemigewasset Bank v. Brackett*, 4 N. H., 557; *Corbett v. Swinbourne*, 8 Ad. & El. [Eng.], 673; *Hornfager v. Hornfager*, 6 How. Pr. [N. Y.], 279; *Hope v. Brinkerhoff*, 4 Edw. Ch. [N. Y.], 660; *Hoyt v. Sheldon*, 4 Abb. Pr. [N. Y.], 59; *Ormsbee v. Brown*, 50 Barb. [N. Y.], 436; *Farwell v. Myers*, 59 Mich., 179.

IRVINE, C.

This was an action of replevin for 250 head of cattle by the defendant in error against the plaintiffs in error. On

the first trial there was a verdict and judgment in favor of
the defendants in the district court.   This judgment was
reversed by this court.  (*Milwaukee & Wyoming Investment
Co. v. Johnston*, 35 Neb., 554.)   The case has been retried,
resulting in a verdict and judgment for the plaintiffs, and
the defendants now prosecute error.   The evidence is sub-
stantially the same as on the first trial, and the facts having
been stated somewhat in detail in the former opinion, we
refer to that and will not restate them, except that, in view
of one argument now made, it should perhaps be stated
that the business of the corporation, as set forth in its char-
ter, is "buying, selling, raising, shipping, exchanging, and
dealing in all kinds of cattle, horses, and other live stock,
in the territory of Wyoming," etc., and that the duties of
the manager, as provided by the by-laws, and as briefly
referred to in the former opinion, are prescribed as follows:
"The manager and assistant manager shall reside and keep
their office in the territory of Wyoming and shall have the
charge and management, subject to the orders of the direc-
tors, of all the affairs and property of the company in said
territory."

On the former hearing the case was decided solely on
the effect of the evidence as to a custom in Wyoming
whereby the manager of a cattle ranch, it was claimed, had
power to sell cattle therefrom, and the court in the former
opinion laid down certain rules for the determination of
that question alone; that is, as to what was necessary in
order to establish a custom vesting in the manager au-
thority to so dispose of cattle.   As now presented an en-
tirely different question arises.   On the trial in the district
court a special verdict was taken whereby, under instruc-
tions conformable to the former opinion, the jury found
that no such custom prevailed.   The jury also found that
prior to the sale of the cattle in question Adams had not,
with the plaintiff's knowledge, performed any similar acts,
and under a peremptory instruction there was a finding

that Adams possessed no actual authority to make the sale. There were other findings not material to the questions which we shall consider. The former opinion strongly implied a holding that no actual authority existed for the sale made by Adams, and we shall not here reconsider that question. The judgment in favor of the plaintiff was evidently entered on the theory that, in the absence of such actual authority, or apparent, conferred either by a custom of business or by the exercise of prior similar acts, the plaintiffs could not be bound by Adams' acts. One instruction given by the court clearly shows that the judgment proceeded on this theory. This instruction was as follows:

"An act is within the apparent authority of the agent when it is of like character as that of prior acts performed by him for the same principal, and which such principal, knowing the same, sanctioned or ratified. The act of an agent within his apparent but not within his real authority will bind his principal only in case the person dealing with such agent knew of such prior acts and dealt with the agent in reliance thereon; and in this case you are instructed that unless you find from a preponderance of the evidence that Thomas R. Adams had prior to the sale of these cattle performed acts of a similar character, and that the plaintiff, after knowledge or notice thereof, sanctioned or ratified such prior similar acts, then you will not be justified in finding that Adams possessed the apparent authority to sell the cattle in question. The defendants cannot base any rights in this action upon the ground that they dealt with Thomas R. Adams as having the apparent authority to sell the cattle unless it appears from the evidence that they, or one of them, knew of facts giving such apparent authority to Adams, and acted upon such appearances in the transaction of purchasing the cattle in question.

"The mere fact that the plaintiff had entrusted the care, management, and possession of these cattle to Thomas R. Adams, gave him no authority to sell them. Although

authority on the part of an agent may in proper cases be implied from the words and conduct of the parties, or from the circumstances of the case, yet the extent of the authority so implied cannot exceed the necessary and legitimate effect of the facts from which it is inferred, but must be limited to the performance of like acts under like circumstances. The authority, if implied at all, can only be implied from facts."

In the light of all the instructions it was clearly the view of the court that, it having disposed of the question of actual authority, and the jury having found that no such general custom existed as would, under the former opinion of the court, confer authority upon the agent, no apparent authority could exist unless by the exercise by the agent of such authority in the past, supplemented by knowledge of those acts on the part of the company, and by similar knowledge on the part of defendants, relied on by them in making the purchase. It is familiar law that a principal is bound by the acts of his agent, not only when performed within the scope of his actual or implied authority, but when within the scope of apparent authority conferred upon him by the principal. There have been many cases distinguishing in this respect between a general agent and a special agent; and perhaps this distinction is not without value, although in most cases it simply throws back one step the process of investigation. Indeed, with regard to acts of corporations it has often been said that the only general agents are its directors acting in their corporate capacity. Strict application of the distinction would, therefore, constitute all acts of corporations not performed under a resolution of the board of directors the acts of special agents, and would require all persons dealing with corporations, except in pursuance of such resolutions, to proceed at their peril. This at one stage of the law might have been a proper doctrine, but the courts must take notice of the fact that the province of corporations is now vastly enlarged; that corporations

now exist, not only for the transaction of public or ecclesiastical affairs, but for the purpose of carrying on ordinary business transactions. We have now private corporations, not only operating railroads and other institutions having *quasi*-public functions, but also corporations conducting banks, manufacturing establishments, live stock raising, as in the present instance, and even retail shops. The domain of individual enterprise has, in other words, been invaded by corporations, and in the conduct of such enterprises we can see no reason and no principle of law requiring the application of rules to such corporations different from those applying to individuals under similar circumstances, except where the acts relate to the operations of the corporation in its capacity as such. What we mean to express by this is that in transactions having no relation to the corporation in its corporate capacity, but solely in regard to the conduct of its business affairs, the general principles applicable to individuals should apply.

It is argued that one dealing with a corporation is, as a matter of law, bound to take notice of its charter and of its by-laws; that one cannot, therefore, claim any right under the act of an agent of a corporation whose authority by its by-laws is so restricted as to invalidate such an act; that the converse of this must be true, and that, therefore, one dealing with an agent of a corporation, empowered by its by-laws to perform a particular act, may protect himself under such by-law, although he had no actual notice thereof and although by specific instructions the agent had been forbidden to perform such act. Following out this line of argument, it is contended that the by-law providing for a manager conveyed upon him authority to sell cattle, and that such authority could not, as against a stranger, be restricted by private instructions. To this, however, we cannot assent, although it has received some support from the courts. Certain cases in the New York supreme court lend credit thereto, but they are rudely disturbed by the state-

ment of the court of appeals (*Rathbun v. Snow*, 123 N. Y., 343), that "by-laws of business corporations are, as to third persons, private regulations, binding as between the corporation and its members or third persons having knowledge of them, but of no force as limitations *per se* as to third persons of an authority which, except for the by-laws, would be construed as within the apparent scope of the agency." An opinion of the supreme court of Virginia (*Bocock's Executor v. Alleghany Coal & Iron Co.*, 82 Va., 913) also is in support of the contention, but its force as authority is destroyed by the fact that it is based on a flagrant misquotation of a decision of the same court in *Bockover v. Life Association*, 77 Va., 85, the court in that case having correctly quoted from *Relfe v. Rundle*, 13 Otto, [U. S.], 222. The earlier Virginia case and the case in the supreme court of the United States relate to an entirely different question. Both courts laid down an entirely different doctrine, and the opinion in the later Virginia case disregards the point in controversy in the cases cited, and very materially misquotes the language of the court. The better doctrine is that of the New York court of appeals in *Rathbun v. Snow*, already quoted, when restricted to the business operations of the corporation, and not applied to the performance of corporate acts, such as the issuance of bonds or like acts where the corporate powers are themselves involved, as distinguished from the particular exercise of powers clearly possessed by the corporation, by subordinate agents thereof.

The sale of these cattle was clearly within the power of the corporation, the only question was the apparent authority of this particular agent of the corporation to make the sale, and we may thus divest ourselves in the present inquiry of all investigation as to corporate functions, and consider whether or not there was error in the judgment independent of the fact that the plaintiff is a corporation. A review of the authorities bearing on the question would

be almost endless, and their confusion is such that it would hardly be profitable. We conceive that the rule whereby a principal is bound by the acts of his agent beyond his actual authority, but within its apparent scope, is founded in the first place on the maxim that where one of two innocent persons must suffer, it should be that one who misled the other into the contract (Story, Agency, sec. 443), and this doctrine is founded on a broad principle of equitable estoppel or estoppel *in pais*. We conceive that a proper statement of it, with reference to such a case as we have before us, is as follows: That where a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it. We do not think that in order to bring a case within this principle it is in all cases necessary to show that by general custom, as defined in the former opinion of the court, such agents have such authority; nor do we think that it is necessary in all cases to show that the same agent had previously performed similar acts; that such acts were known to the principal; that the third person also knew of them, and relied on them in the transaction, or even that similar agents had in the past performed such acts. A number of elements may influence the solution of the question. In this case the corporation was located in Milwaukee, in the state of Wisconsin. It was formed for the purpose of doing business in Wyoming, and most of its business was there conducted. The very fact that the corporation and its general officers held their office at a remote point was an element for consideration. (*Rathbun v. Snow, supra.*) One might be justified in dealing with a person in apparent management of the business in Wyoming, where the

office of the corporation was in a distant state, where he would not be so justified if he found the general offices and general officers of the corporation at or near the place where the business was conducted.    Furthermore, the general nature of the business and its requirements was an element for consideration.    (*Montgomery Furniture Co. v. Hardaway*, 16 So. Rep. [Ala.], 29.)    It might well be that one would be justified in buying ripe fruit from one found in charge of orchards where he might not be justified in dealing with such a person in goods not perishable in their nature.    Business usage might have its influence, although not so general and uniform as by implying notice to the principal to also imply that such custom was in view when the agent was appointed.    We mention these instances merely by way of illustration, and we hold that the apparent authority of the agent, beyond his actual authority, does not depend solely upon custom or solely on the performance of previous similar acts, whether known or unknown to a person dealing with him, but that, subject to the general rule we have above stated, and to general legal principles, the question is one of fact to be determined by the jury under all the circumstances of the transaction and the business, as disclosed by the evidence.

It follows that the special findings referred to were insufficient whereon to found the judgment, and that the instruction quoted was erroneous.

REVERSED AND REMANDED.