### BANK DEPOSIT APPROPRIATED BY BANK EMPLOYEE.

Circuit Court of Cuyahoga County.

LULU MAY TOOLE v. THE CLEVELAND TRUST COMPANY.

Decided, February 3, 1908.

*Agency—Banks and Banking—Bank Estopped to Deny Apparent Authority of Employee.*

1. It is an obvious limitation upon the liability of the principal that he who deals with the agent must act in good faith, respecting every restriction upon the agent's authority of which he may have notice.

2. Where a prospective patron goes to the "New Accounts" window in a bank and asks for a certain employee of the bank with whom she is acquainted, and he is called from the rear portion of the bank to the place at the window and there accepts a deposit and issues to her a pass-book of the bank showing that such a deposit has been made by her, the bank is estopped from denying the receipt of the deposit or the authority of the employee to receive it.

3. The fact that an employee of a bank, who has received from a depositor a sum which he had appropriated to his own use, later makes an entry in the pass-book he had issued the depositor showing the withdrawal of a certain amount which he represents the bank had invested for the depositor, is no defense to the bank in an action by the depositor for the amount of the deposit.

*W. D. McTighe* and *W. B. Neff*, for plaintiff in error.
*Kline, Tolles & Goff*, contra.

MARVIN, J.; WINCH, J., concurs; HENRY, J., dissents.

The parties stand in the same relation to each other in this court that they did in the court below. The pleadings upon which the action was tried were an amended petition, an amended answer to the amended petition and a reply. The allegations on the part of the plaintiff are: that on the 12th day of February, 1903, she, under her then name of Lulu May Blackmore, opened a savings account with the defendant, which is a

banking corporation, and deposited with the defendant on that day the sum of three thousand dollars; that on the 27th day of April, 1903, that she further deposited with the bank the sum of one thousand dollars. She admits that payments to the amount of $1,293.60 were made to her, and says that the balance of her said deposits, together with interest, is now due from the bank. The defendant by its amended answer admits the deposit of one thousand dollars and denies the deposit of the three thousand dollars, and avers further that if any other deposit was made by the plaintiff the same was withdrawn by her. The reply denies the withdrawal of any sum other than that admitted in the petition. Upon these issues the case went to trial to a jury in the court of common pleas, and upon the evidence the court withdrew from the jury all consideration of the question of whether anything was due to the plaintiff by reason of her claim of a deposit of three thousand dollars. The remaining issue was submitted to the jury, and on that a verdict was returned for the plaintiff. The error which the plaintiff claims in this proceeding is the withdrawing from the consideration of the jury all the questions arising in connection with the alleged deposit of three thousand dollars. So as far as this deposit is concerned the only claim made by the plaintiff on the trial was that such deposit was made and that there remained with the bank the sum of two thousand dollars. The real question then which the plaintiff claims should have been submitted to the jury, and which was taken from it by the action of the court, was the question of whether there was in the hands of the bank upon such alleged deposit the said sum of two thousand dollars. On the part of the defendant it is urged that the court was justified in its action upon two propositions. First, that the three thousand dollars was never deposited. Second, that under the evidence the bank is relieved from liability on account of a withdrawal from it by the authority of the plaintiff of said entire sum. (As has already been said, the plaintiff admitted that one thousand dollars of the said three thousand dollars deposited had been withdrawn.) Of course, if either of these propositions is correct, there would be no liability on the part of the defend-

ant to the plaintiff, and if upon the evidence introduced by the plaintiff it could be said, as a matter of law, that the bank was not chargeable for this deposit, or if it could be said as a matter of law that there had been a withdrawal of this deposit by the plaintiff or her authorized agent, then the court was justified in directing the jury to pay no attention to these issues. The plaintiff testified that on the 12th of February, 1903, she went to the bank carrying with her a check for the amount of $3,000, for the purpose of depositing it in the bank; that an employee of the bank whom she knew to be a bookkeeper, but further than that she had no knowledge of his special duties in the bank, was a distant relative of hers, and that he had prior to this time said to her that the best thing to do with her money would be to deposit it in this bank. The name of this employee was Boyd. She says that she went with this check to the window where money is received, and that there was an employee of the bank at this window whom she did not know. She inquired for Mr. Boyd; she says, however, that Boyd was in the bank, back of the partition in which certain windows are situated and through which business is done. The man at this window, she says, then called Boyd, who came to the window. The man who was in this compartment where this window faced the lobby retired from the compartment or cage as it is sometimes called, or, rather he stepped out she says she supposes, she is not able to say certainly that he did. She told Boyd she had come to make this deposit, and she endorsed the check or draft, handed it through the window to Boyd, who gave her one of the regular pass books of the bank which was numbered 9412. This pass book was introduced in evidence as Plaintiff's Exhibit A, and containing the regulations of the company in print for the guidance of depositors. On the first page prepared for the keeping of accounts are the printed words "The Cleveland Trust Company. In account with," and then on the opposite page is written the name "Lulu M. Blackmore." This is in the handwriting of Boyd, so that on opening the book was the heading "The Cleveland Trust Company—In account with Lulu M. Blackmore." These pages are ruled perpendicularly so as to make separate

columns, the extreme left-hand column of the page being headed with the word "Date" the next column with the word "Withdrawn," the third column with the word "deposit," the fourth column with the word "balance." In the date column there appears the figures "1903-2-12." Under the withdrawn column are the figures "3000" and in the balance column the figures "3000" all in the handwriting of Boyd. This book, with the writing indicated, was handed at this window by Boyd to the plaintiff. Thereafter a considerable number of items are entered under dates in the withdrawn column, and near the bottom of the page appears an entry undated, but beginning at the extreme left hand side of the page in the column under the heading of "Date," and running over into the column of "Withdrawn" in the handwriting of Boyd; "Pd to investment" and just over the last part of the word "investment" and apparently as a part of the same entry, are the figures "2000," and in the column of "balance" are the figures "5684." The balance next before this is "2056 84" so that if two thousand dollars were withdrawn at this time, the balance appearing upon the book is right. This entry having been made the book was returned by Boyd, as the plaintiff says, to her. Later, appearing under various dates under the heading of "withdrawals" are certain small sums, and in the columns of "balance" these withdrawals up to and including a withdrawal of $9.84 on the 7th of May, 1903, exhaust the $56.84, which was the balance shown after the withdrawal of the $2,000, and in the column of balance at this date are several ciphers.

Under the facts as claimed by the plaintiff, was the bank chargeable with the three thousand dollars as a deposit? It is urged that there was not a *prima facie* case made out against the defendant for such deposit, or that if there was it was overcome by the undisputed evidence introduced on the part of the defendant that Boyd was not authorized by the bank to receive deposits, and that the same was never entered on any of the books of the bank other than the pass book already mentioned, delivered by Boyd to the plaintiff, nor was the money or check ever in fact received by the bank. No claim is made on the part of the

defendant nor could any claim be made by it that if Boyd was the agent of the bank in receiving this sum it would not be liable for it notwithstanding it was never in fact credited to plaintiff on the books of the bank, or delivered to it, nor is any claim made but that if the bank had clothed Boyd with the apparent authority to receive this deposit the plaintiff believing that he was so clothed, the bank would not be liable. But, it is urged that Boyd not only was without authority to receive the money but that the bank had not clothed him with any apparent authority to receive it. It is this last proposition which needs consideration here. Boyd was an employee of the bank; his duties were performed back of the partition which separates the part of the room in which the business of the bank is transacted from the lobby, or that part of the room which customers enter, and from which, through the openings in the several windows in the partition they pass money to those within, for deposit or payment of indebtedness. He was not at the window at which money is received when the plaintiff came up to that window; another man was there. She asked for Boyd. The man who was at the window presumably was authorized to receive deposits. He called Boyd at her request. Boyd came in to the compartment. Either the man who was in that compartment and called Boyd remained there and presumably saw what Boyd did, or, which is probably the case, he retired from the compartment, apparently leaving Boyd in charge of it, leaving the books which the bank issued to depositors there where Boyd could use them. He knew that the thing ordinarily done by people who came to that window was to deposit money there with and receive these pass books. He was not likely to have left that window and that compartment with Boyd there upon the supposition that this plaintiff desired to visit with Boyd. It was not a place at which he could have supposed that she expected to visit with Boyd or to do any business with him other than that connected with the bank. Knowing this, he apparently left Boyd in charge of this compartment. Boyd, as the plaintiff says, while there was apparently in charge of this compartment to receive this money. It is possible that because

she called for Boyd and he came here into that room and was left there by the proper agent of the bank, apparently in charge of it, that the bank can say that she had no right to assume that he was authorized to do the business which was ordinarily done at that window, and which he who thus left Boyd in the compartment, knew was the only proper business to do at this window? A majority of the court think not.   (Judge Henry dissents from this proposition.)

Certainly, the plaintiff's case would not be stronger than it now is if Boyd had there said to her that his duties were to receive deposits at that window, for his agency could not be shown by any declaration of his.  Suppose that a half dozen clerks in the bank other than the man whose duty it was to receive deposits at that window, had assured her that Boyd was authorized to receive money at the window here, the case would be no stronger than it now is, because she could not rely upon the declarations of these unauthorized men to fix the duties of Boyd or the scope of his agency.  Suppose that before she made her deposit, but after Boyd came into the compartment, another party had stepped up to this window and handed money to Boyd for a deposit and he had received it, and had given to the party so depositing one of the pass books of the bank with the entry of the deposit made upon it, it would seem certain that the bank would be held for that deposit, for the reason that Boyd, was there in charge or apparently in charge of the compartment where deposits were properly made.  Suppose immediately after this, the plaintiff had delivered her money to Boyd as a deposit and he had given her the pass book which he did give her, would the fact that Boyd had been called at her request into the room by the man in charge of it, and left apparently in charge, so distinguish her case from that of the other depositor that it could be said in the one case the bank was bound and in the other it was not bound?

Suppose that instead of going to the window of the receiving agent for the purpose of making a deposit, she had gone to the window of the paying teller for the purpose of obtaining money upon this check or draft which she had, she had asked for Boyd,

the paying teller had called him, left the compartment allowing Boyd to go in to transact whatever business there was to be transacted with her, that he had left the money drawers open in such wise that they were easily accessible to Boyd, and the plaintiff had asked Boyd to cash this check or draft which she had, she first having endorsed it in blank, and he had thereupon taken the money of the bank thus left under his control and had handed to her the amount of her check or draft, to-wit, $3,000, and instead of putting the check or draft in the proper place in the bank he had put it in his own pocketbook and had obtained money on it at some other place and absconded with the money, could the bank have recovered from her the money so delivered to her by Boyd? Certainly if that money was so paid to her by one who had no authority to pay it, and had no apparent authority, that is one not apparently clothed by the bank with authority thus to use its money, the bank could have recovered it from her, but in the case supposed it seems clear that there could have been no recovery by the bank against her. We see no reason why the apparent authority to Boyd in the case supposed differs in any wise from the apparent authority of Boyd under the testimony of the plaintiff.

Suppose that a customer goes into a store in this city in which he knows that John Doe is an employee, but does not know what his duties are; John Doe is the only employee with whom the customer has any acquaintance. He wishes to purchase a coat. He inquires of the man in charge of the coat counter in the store for John Doe. That man calls John Doe and himself leaves the counter, so that he does not see what thereafter takes place. The customer tells John Doe what he wants, he buys the coat of him. It is worth $20. He hands the $20 to John Doe, who puts it in his pocket, and never reports to his employer, but he does report the sale. The merchant makes demand upon the customer later for payment of the $20. The answer is: I paid the $20 to the man who sold me the coat in your store. But, the merchant replies: That man had no authority to sell you a coat nor to collect pay for it. You went to the proper counter where coats were on sale and did not ask of the man in charge of that counter to sell

you a coat, but you asked him to call John Doe. He called him and left the counter and John Doe sold you the coat and took the pay for it. Is it possible that the customer would be liable for the payment of the $20? Although as a matter of fact the selling of coats was no part of the duties of John Doe.

In the case of *Storage Company* v. *Cox*, 74 Ohio St., 284, there is a discussion of the question of how far one may presume that an agent who assumes to perform a certain duty is authorized to perform such duty. The facts in the case were that Cox went to the place of business of the storage company, whose business was the storing of goods, to have his goods taken from his home and stored in the warehouse of the company. He asked for the manager. One Smith came forward who was apparently the man in charge. There was nobody else but Smith in authority, and as a matter of fact Smith was authorized to receive goods for storage. The company advertised that not only did it store goods but it insured them, where the owner of the goods so stored desired it. Smith had no authority to contract for such insurance but being in apparent charge of the business he did arrange with the party who stored the goods to have them insured. He failed to make the insurance. The goods were destroyed by fire. It was held that the neglect to insure was the neglect of the storage company. In the course of the opinion Judge Shauck, at page 293 uses this language:

"The company fixed the character of its business and employed Smith in the capacity in which he was presented to those who appeared in response to its invitation to the public to store goods with it for hire. It was not an employment of a transient character or to represent it in the conduct of an isolated transaction, but in the general conduct of a business of established and defined character and scope.    *    *    *

"It is to the relation into which the parties were thus brought by the express and confessedly authorized contract of bailment in connection with the facts found in the statement of the case that we are to apply the rules of law respecting the apparent authority of an agent. A correct statement of the matured view of that subject will show that it does not have exclusive regard to the immunity of the principal without consideration of the rights of those who accept his invitation to enter into con-

tract relations with him. That view is comprehensively and accurately stated in *Johnston* v. *Milwaukee & Wyoming Investment Co.*, 46 Neb., 480:

" 'Where a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform on behalf of his principal a particular act, such particular act having been performed the principal is estopped as against such innocent third person from denying the agent's authority to perform it.'

"It is an obvious limitation upon the liability of the principal that he who deals with the agent must act in good faith, respecting every restriction upon the agent's authortiy of which he may have notice."

In the case of *The Railway Co.* v. *Bank*, 56 O. S., 351, this question is discussed to some extent. In that case certain certificates of stock of a corporation, properly signed and sealed, were left in the care of an agent of the company, who fraudulently issued them, and it was held that the parties receiving the stock thus issued, were to be protected. Judge Minshall at page 383 uses this language:

"The general rule is that a corporation, like a natural person, is liable for the negligence of its agents causing the injury to others where the act done is within the scope of their agency, whether the act be one of omission or commission."

This is equally true where the act done was within the apparent exercise of the authority of the employee.

In the case of *Munn et al* v. *Burch et al*, 25 Ill., page 35, it is said in the syllabus:

"The public are not bound to inquire into the special instructions which the officers ·or servants of a bank may have received, as to the manner in which their duties are to be performed."

In the case of *The Manhattan Company* v. *Lydig*, 4th Johnson (New York), page 377, it was held that, where a party placed money in the hands of the bookkeeper of a bank for the purpose of having him make a deposit for the owner of the money the bank was not liable. In this case one Brower was a bookkeeper

in the bank. The depositor often handed him money outside of the bank for the purpose of having him deposit it, and Brower actually entered a deposit in the ledger of the bank but he made no entry in the cash book, nor did he ever, in fact, deposit the money, and it is held that the bank was not liable, but the court on page 388 uses this language:

"Brower was the servant of the plaintiffs, when in their employ, and in their office; and for acts there done the plaintiffs (the bank) are answerable."

In the case of *East River National Bank* v. *Gove*, 57th New York, 597, this language is used in the syllabus:

"Where one pays a debt due by him to a bank upon the demand of an officer thereof, whom he finds employed in its business, to said officer, over its counter, without knowledge that the officer's authority is so limited that he is not authorized to receive the money, it is a payment to the bank and the latter is bound thereby.

"Plaintiff, to the knowledge of defendant, a customer, employed in its bank a paying and receiving teller, the general duty of the latter being to receive moneys paid or deposited. In his absence other officers or clerks acted in his place. Defendant having overdrawn his account by mistake, received a letter from the paying teller requesting him to call. He went to the paying teller at the bank and at his request paid him over the counter the amount required to rectify the error; this was not entered on the books of the bank. It did not appear that the receiving teller was in the bank."

And at page 601, Judge Earl uses this language in the opinion:

"The defendant went to the bank, he found behind the counter the paying teller who asked him to pay a demand the bank had against him, and he then paid it. It would be a very inconvenient and unreasonable rule to hold that a bank was not bound by such payment. If this payment was not binding upon the bank, it would not have been if Van Orden had declared to the defendant that he was authorized to receive it; and if every clerk then in the bank except the cashier had, upon the inquiry of the defendant, made the same declaration. If he had gone to the bank to pay a note and the paying teller had gone to the vault and got the note, taken the money and surrendered up the note upon the same principal such a payment would not have bound the bank.

Banks must be held responsible for the conduct of their officers within the scope of their apparent authority.  When one goes into a bank and finds behind the counter one of its officers employed in its business, and upon his demand pays a debt due the bank in good faith, without any knowledge that the officer's authority is so limited that he has no right to receive it, he must be protected and the bank must be bound by the payment.''

These authorities and considerations lead a majority of the court to the conclusion that under the evidence introduced by the plaintiff, a case was made to hold the bank for the deposit.

There remains for consideration the question whether the bank has been relieved from the obligation which we find it assumed when this pass book was delivered by Boyd to the plaintiff.  It should be said in this connection that the several withdrawals entered in the pass book, other than the two thousand dollars, were actually paid by the hand of Boyd, either to the plaintiff or those authorized by her to receive it.  Presumably these payments were made out of Boyd's own money, though the plaintiff supposed they were paid out of the money of the bank, so that there can not be said to have been any ratification of Boyd's act in taking the three thousand dollars because of any credits upon it or payments made thereafter when it was so deposited.  Presumably the bank had no knowledge of these payments.

If the bank has been released from its obligation to pay the two thousand dollars, it has been so released by some act of the plaintiff.  The testimony of the plaintiff was, that Boyd said to her that the bank would invest her money with its own in such wise that she would receive a large per cent. upon it.  Her testimony showed that each time a withdrawal was entered by Boyd he handed the book back to her, and that she understood the figures under the ''withdrawal'' column indicated that she had withdrawn the amount represented by such figures, and that there remained the balance that was represented by the figures in the balance column.  So that when Boyd made the entry ''Pd. to investment 2000'' and passed the book back to her the balance showed that the two thousand dollars had been deducted

from the amount theretofore shown to be a balance, and was understood by her as meaning that there was still a balance uninvested of $56.84. But she says, that she understood that the two thousand dollars indicated in the entry, was invested by the bank. Her testimony shows that she had no very distinct idea of what was to be done, but in some way she understood that through the bank her money to the extent of two thousand dollars, would be invested in some very profitable or large dividend paying investment. It appears that for sometime after this entry, Boyd paid her on the first day of each month, $30, representing to her that this was the dividend upon her invested two thousand dollars. So far as it appears from the evidence, however, nobody did make any investment of the two thousand dollars, certainly the bank made no such investment of it, nor did Boyd. When fairly considered, her testimony is that Boyd was not authorized alone to make any such investment for her.

If the bank is to escape liability here on the ground of the withdrawal of the two thousand dollars, it escapes not because of any payment it ever made, not because of any investment it ever made, and not because of any payment or investment it ever made, to or for the plaintiff by Boyd, or anybody else. Though the bank is chargeable with this money it never had it, and it never paid it out either to the plaintiff or anybody else. It appears that later the plaintiff said to Boyd that she had no evidence of any investment that had been made of this two thousand dollars, whereupon he made an entry in another pass book which the trust company had issued, to the plaintiff, in the deposit column of two thousand dollars. This under date of January 4, 1904. This, however, as we view it, neither increased nor lessened the responsibility of the defendant to the plaintiff. We think the testimony of the plaintiff was such that, if believed, a jury would have been justified in finding that the plaintiff had never received for investment by herself, or by anybody authorized to act for her, the two thousand dollars, nor had she done anything to estop herself from claiming that the amount was still owing to her, except that the same had been reduced by the $30 per month payments, which, as has already been said, Boyd had made to her.

The result is that the judgment of the court of common pleas is reversed for error in directing the jury to disregard entirely any claim founded upon the three thousand dollars deposit.

Judge Henry dissents from this judgment of reversal though he concurs in the proposition that the evidence of withdrawals did not justify the court in taking this issue from the jury, but that the evidence did not show that the bank was ever liable for the money, evidenced by this entry of three thousand dollars in the pass book.