- PHŒNIX INSURANCE COMPANY OF HARTFORD V. WILLIAM H. WALTER ET AL.

FILED APRIL 21, 1897. No. 7218.

1. **Principal and Agent: OSTENSIBLE AUTHORITY.** "Ostensible authority to act as agent may be conferred if the party to be charged as principal, affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency." *Thomson v. Shelton,* 49 Neb., 644, approved and followed.

2. ———: ———. "That the party to whom money due another is paid is not in possession of the instruments by which the indebtedness is evidenced is not conclusive of the question of the authority, or lack of it, in the party receiving the money to collect it, but is a circumstance or fact to be considered in the determination of such question." *Thomson v. Shelton,* 49 Neb., 644, approved and followed.

3. **Review: ADMISSION OF EVIDENCE: HARMLESS ERROR.** That immaterial, illegal, or irrelevant evidence was admitted at the trial of a cause by a court without the intervention of a jury furnishes no sufficient reason for the .reversal of the judgment.

4. **Mortgages: AUTHORITY OF AGENT TO WHOM PAYMENT WAS MADE: FINDING FOR MORTGAGOR SUSTAINED.** The evidence examined, and *held* to sustain the findings of the trial court.

ERROR from the district court of Webster county. Tried below before BEALL, J. *Affirmed.*

*Wright & Stout,* for plaintiff in error.

*J. S. Gilham, contra.*

HARRISON, J.

The plaintiff in error, on December 29, 1893, commenced this action in the district court of Webster county to foreclose a mortgage on certain real estate described in the petition, and to enforce the payment of a principal note in the sum of $800 and accrued interest thereon, also an amount of taxes which had been assessed against the real estate and paid by plaintiff to protect its security. In the answer there were pleaded, payment of the amounts

claimed by plaintiff, facts which it was claimed estopped plaintiff to prosecute its action, also that the premises mortgaged constituted the homestead of the mortgagors and that the mortgage in suit had been acknowledged before a notary public, who was the manager of the loan company of or through which the loan evidenced by the note and mortgage in controversy had been obtained; hence the instrument was invalid and unenforceable. The main and real issue in the case is whether or not payment of the indebtedness evidenced by the note and mortgage had been made. This is raised here under the assignment that there was not sufficient evidence to sustain the findings and judgment. This we will now examine.

At the times of the transactions from which evolved the present suit there was in existence in Red Cloud, this state, what was known as the Nebraska & Kansas Farm Loan Company, the business of which is sufficiently indicated by its title or designation. There was in Hartford, Connecticut, a firm of loan brokers doing business under the name and style of George W. Moore & Co., their office and principal place of business being the city last named. Of this firm one James H. Tallman was an active working member, and the business of the firm was the purchase and negotiation of western and southern farm loans. The plaintiff was an insurance company organized and existing under the laws of the state of Connecticut, with its principal office and place of business in Hartford. This insurance company had quite a large amount of money, a goodly sum of which it invested in farm loans. The manner in which the business between the Nebraska & Kansas Farm Loan Company and the firm of George W. Moore & Co. was conducted we will now state generally. At its inception, and until after the first two or three transactions (so it is stated by one witness who, during the greater portion of the time, was secretary of the loan company at Red Cloud), applications for loans were received from prospective borrowers by the company at Red Cloud, the se-

curity offered or land to be mortgaged was examined, and, if approved, abstracts of title were prepared, notes and mortgages drawn and executed, insurance policies, covering buildings on mortgaged premises and made payable to the mortgagees, were obtained, the mortgages recorded, and all forwarded to George W. Moore & Co., at Hartford, for inspection and approval or rejection. For such as were approved a sum of money, in the aggregate of the sum evidenced by the mortgages, was placed in the Hanover National Bank at Hartford to the credit of the Nebraska & Kansas Farm Loan Company and by it received in the usual course of such affairs. In all transactions subsequent to the first two or three the instructions from the eastern firm were to the effect that as soon as any papers were completed and started for the east, the western company should draw upon the firm at Hartford for the amount of money represented or called for by the loans included and sent, and this course was adopted and followed in regard to all succeeding loans. The loans were all drawn payable to James H. Tallman, who, as we have said, was a member of the Hartford firm, and whenever a loan was paid or its release became necessary, it was released by James H. Tallman, regardless of the then ownership of the mortgage to be released, or whether any sale or assignment of it had been made. The notes, interest coupons, and mortgages all stated that the payments were to be made at the Mechanics Savings Bank of Hartford, Connecticut. The Nebraska & Kansas Farm Loan Company collected all interest as it became due on loans which had been effected through it, also the principal sums, when due and paid, and in doing these things sent out notices to the different parties debtors prior to the dates and informing them respectively of the maturity of the interest installments or principal sums as the case might be, attended to the payment of taxes when allowed by mortgagors to become delinquent, also procured renewals of insurance if policies on mortgaged premises were allowed to expire, and if notes and mortgages were

not paid when due they were transmitted to the company at Red Cloud for foreclosure if it became necessary. It was expected, as was usual in such cases, that the western company would forward all moneys collected to the firm in Hartford, each one having a book or books in which an account was kept of or with each mortgage or loan, by names of parties and by number. When money was received by the Hartford firm it was applied in payment of the coupons if interest, or mortgage if principal, for which it was intended, as indicated by letter accompanying it, and in some instances the parties owning mortgages, to whom they had been sold by the eastern firm, received the money at its office. To others it was sent by draft, etc. In the case of the plaintiff, it appears it was taken to its office, it being close to that of the firm of brokers, and there delivered. In each instance the coupon or mortgage, as it might be, was obtained from the holder and transmitted by the eastern firm to the loan company at Red Cloud and by it sent or given to the borrower to whom it belonged.

The note and mortgage in suit were executed of date October 21, 1885, and were due October 1, 1890, payable to James H. Tallman, and pursuant to the business arrangement hereinbefore noticed between the loan company at Red Cloud and George W. Moore & Co., passed into the hands of the latter and were sold to the plaintiff. These, with a number of similar papers evidencing loans on Nebraska farms effected by the company at Red Cloud, and all of which had been transmitted to George W. Moore & Co., and by this firm sold and assigned to the plaintiff and held by it, and all collections of interest or principal, also incidental matters in regard to taxes and their payment, renewals of insurance, etc., were supervised and performed by the firm of brokers and the Nebraska & Kansas Farm Loan Company, pursuant to the plan inaugurated by them, some of the details of which we have hereinbefore set forth. The assignment of the mortgage in question to plaintiff was not recorded in

Webster county,—the *situs* of the mortgaged land,—and the mortgagor had no knowledge of its existence or that the owner of the papers was other than Tallman, to whom they were in terms payable. The plaintiff never presented either interest coupons or notes when due at the Mechanics Savings Bank at Hartford, where they were made payable, but in each instance depended on receiving the amounts due thereon in the manner we have previously herein stated. The note and mortgage in suit matured, as to the principal sum, October 1, 1890, shortly prior to which date the mortgagor was notified of such fact by the loan company at Red Cloud, and to obtain the funds to pay the amount due, executed a mortgage payable to the loan company, which, it appears, was afterwards sold, and the books of the company disclosed a credit to the mortgage in suit of the amount due thereon. About the 1st of October, 1891, a representative of the plaintiff called at the office of the loan company at Red Cloud, and as to what occurred at that time we will give an extract from the evidence of the then secretary of the loan company.

Q. Do you know one E. B. Cook, manager of the loan department of the Phœnix Insurance Company, plaintiff?

A. I had a slight acquaintance with him.

Q. When did you meet him?

A. About the first of October.

Q. What took place between you and him at that time?

A. Well, he came into the office with another gentleman, made himself known, and presented his credentials showing who he was, and asked if we had any money for him. I paid him some money [it appears in another portion of the evidence, about $400], and he wanted to know if we couldn't pay him some more, and I told him no we couldn't at that time; he commenced talking about these loans that the Phœnix Insurance Company had. He stated that they had an agent in this state, and wanted to know if it would be satisfactory to us to turn the business over to that agent. I told him as far as I was con-

cerned I would be glad to get rid of it.   I think that was
the first I knew the Phœnix Insurance Company had any
of these loans.

The foregoing is a statement, in substance, of some of
the salient facts shown in the evidence at the trial of this
cause, and from their consideration in connection with
other material, competent facts in evidence, some of
which were similar in intent and effect, we are convinced
that there was sufficient to sustain a finding that even if
it may be said that the Nebraska & Kansas Farm Loan
Company did not have specific authority from or was not
agent in fact for the plaintiff in the collection of the
amount due on the mortgage herein sought to be en-
forced, it had ostensible authority to receive the money.
(*Reid v. Kellogg*, 67 N. W. Rep. [S. Dak.], 687; *Thomson v.
Shelton*, 49 Neb., 644.)   Ostensible authority is such as a
principal intentionally, or by want of ordinary care,
causes or allows a third person to believe the agent to
possess.   (*Quinn v. Dresbach*, 75 Cal., 159; 1 Parsons, Con-
tracts, p. 44\*; *Kasson v. Noltner*, 43 Wis., 650; *Reid v.
Kellogg, supra; Thomson v. Shelton, supra.*)   It is true that
the note and mortgage were not in the hands of the loan
company when it collected the money, and had not been
at any time after their execution and transmission to
George W. Moore & Co. at Hartford, but this was not
conclusive of the fact of the existence of the authority
to collect, but a fact or circumstance to be considered
in connection with other matters of evidence bearing
upon the subject.   (*Thomson v. Shelton, supra.*)   The evi-
dence was sufficient to sustain the finding of the trial
court; hence it will not be disturbed.

There are some further assignments of error argued in
the briefs of counsel in reference to alleged errors com-
mitted in the admission of evidence.   This was a trial to
the court, and if errors were committed in the admission
of evidence, they are unavailable.   That immaterial, il-
legal, or irrelevant evidence was admitted at the trial of
a cause by the court without a jury furnishes no sufficient

reason for the reversal of the judgment. (*Stabler v. Gund,* 35 Neb., 648; *Ward v. Parlin,* 30 Neb., 376; *Enycart v. Davis,* 17 Neb., 228.) The judgment of the district court is

AFFIRMED.