RILEY W. HASKIN, APPELLEE, v. WILLIAM A. LANGDON ET AL., APPELLEES: DAVID R. SHRIVER, APPELLANT.

FILED JULY 6, 1934. No. 28854.

*Earl L. Hunter* and *R. O. Canaday,* for appellant.

*James F. Crowley, Charles E. Bruckman, R. S. Hewitt, Perry, Van Pelt & Marti, James E. Addie, James R. Shively, Stiner & Boslaugh* and *Edmund P. Nuss, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and THOMSEN, District Judge.

THOMSEN, District Judge.

This is an action for the foreclosure of two mortgages. Especially is it a determination of whom of three innocent persons should lose by the embezzlement of a loan broker.

The owner of the land, William A. Langdon, in consideration of the payment to him of $1,000, executed a bond, with interest coupon notes attached, and a mortgage on his land to one of the firm of Hoeppner & Uerling, loan brokers, of Hastings, Nebraska. The mortgage provided that $100 of the principal might be paid, or any multiple thereof, on any interest payment date. The loan would mature in five years, but after about three years Langdon asked the firm for an additional loan of $700, which sum, less some charges and interest on the first loan, was given to him by check after he had executed, to replace the old, a new mortgage, bond and coupon interest notes, in the principal sum of $1,700 secured by the same property. In both transactions the papers were all made to one member of the firm and the notes were negotiable. Langdon neither demanded nor received his old notes or a release of his first mortgage from the loan brokers, nor did he inquire about the first mortgage or who had possession of

the notes at the time the second transaction took place. He relied upon the brokers to satisfy the first mortgage. The notes in both transactions provided that both principal and interest should be payable at the office of Hoeppner & Uerling. Only a typewritten accounting was given by the brokers to Langdon at the conclusion of the second loan. Langdon did not know who owned the first mortgage, but assumed that one member of the firm owned it. The debt secured by this mortgage was never paid by the brokers. Uerling kept the money. The firm is now insolvent; Hoeppner is dead; and Uerling is in the penitentiary.

After the first mortgage was made, it was sold by the firm to Riley W. Haskin, who paid full value for it. Haskin had an assignment of the mortgage given to him, together with the indorsed principal and interest notes, insurance papers and abstract, all of which he took with him and kept in his safe in his own place of business. This assignment had not been recorded when the second mortgage was made. Uerling, of the firm, told Haskin at the time of purchase that Langdon wanted to make payments at the firm's place of business. The notes, of course, so provided. Then, as the interest came due and Haskin received a check from the firm for the interest payments, he would clip the coupon and take it to the firm's office, but he never left any coupon at the firm's office for collection. Haskin had theretofore had similar transactions with the firm in the purchase of mortgages in which the interest and principal were handled in the same way. The record could be clearer as to just how these matters were handled, but from testimony that the other transactions were handled in the same way, one would infer that in these other instances Uerling made similar representations as to the desire of the debtor to make payment at the firm's office and that the notes were all payable there. No other circumstances are shown to assist in inferring an actual agency and the record gives no evidence that Langdon knew of Haskin's prior purchases of mortgages and the handling of collections at Hoeppner & Uerling's office, nor

that he relied upon any apparent authority in the loan brokers collecting for Haskin in former instances from which ostensible authority might thus be established. Under the conditions the equities are more strongly in favor of Haskin. The brokers were Langdon's agents commissioned to pay the debt and not Haskin's agents for collection. Langdon may have been influenced by his prior periodical payment of interest at the office of Hoeppner & Uerling, but "the mere fact that a loan broker collected interest on bonds and turned it over to the bondholder may be a circumstance tending to prove agency to do so, but does not of itself prove authority to collect the principal." *Johnson v. Kindig, ante,* p. 360.

About the day of the execution of the second mortgage, this mortgage was sold by the firm to David R. Shriver. The record shows that Shriver paid $1,700 for this mortgage and had the notes indorsed to him. The papers were all left by Shriver in the possession of Hoeppner & Uerling and placed by Uerling for Shriver in the latter's investment file. Shriver had bought mortgages from the firm for about twenty years.

The district court held that the amount left with Hoeppner & Uerling by Langdon did not constitute a payment to Haskin, but that Hoeppner & Uerling were Shriver's investment agents; that Shriver was bound by the knowledge which the firm had, and that therefore his mortgage should be reduced by the sum of $1,000 principal, and decreed a foreclosure of the (Haskin's) first mortgage with interest and $700 of the (Shriver's) second mortgage and interest.

It seems apparent from the opinion of the trial court that, in reaching the conclusion that the firm was Shriver's investment agent, the court must have taken into consideration evidence in many of the other cases which were at that time tried before him and in a number of which Shriver was a party, and no doubt found that Hoeppner & Uerling invested and reinvested funds of Shriver with or without his knowledge, but with his consent. The record

in this case does not go so far as to disclose these facts. Here the record shows Shriver to be an innocent purchaser for value without notice of any equities against the mortgage and note he purchased. The record shows merely that he bought and paid for a mortgage, had the proper indorsements made, and left the papers in his file in the possession of the firm; that he handled many other transactions in the same way. In other words, he was merely a buyer of investments. This record discloses no other relationship.

Although the question is a difficult one, being made so by reason of the fact that innocent persons must suffer in any event, yet we reach the conclusion, after a very careful consideration of the record and the briefs and arguments of counsel, that the loss must fall upon Langdon, who by reason of his failure to use ordinary business caution enabled John Uerling, of the firm of Hoeppner & Uerling, to embezzle the money. It is not the duty of a creditor to seek his debtor, but rather it is the duty of the debtor to seek the creditor. As said in *Davis v. Polak,* 126 Neb. 640: "Ordinarily, no duty rests upon the indorsee or holder of a negotiable note or bond to notify the maker of such ownership; but the duty is upon the maker to seek out the holder of such instrument when making payment." See, also, *Knopf v. Perkins, ante,* p. 366. "If the maker of a negotiable note pays the same to one who does not and cannot produce the paper, he thereby assumes the burden of proving that the party to whom he pays the money is the owner of the paper, or the agent of the owner authorized to receive the money for him." *Garnett v. Meyers,* 65 Neb. 280. If Langdon had asked for the papers and insisted upon their delivery to him at the time of the second transaction, or had insisted upon knowing who owned the mortgage and the note, if they were not available to the loan brokers, Uerling would never have been able to perpetrate the fraud; but the record fails to show any cautionary measure taken by Langdon. The following propositions of law are applicable to the facts:

"Where one of two parties to transactions must suffer a loss through the misconduct or the wrongs of a third person, the superior equities will be determined from all of the material circumstances, and the burden will be allowed to fall where equity and justice place it." *Omaha Elevator Co. v. Chicago, B. & Q. R. Co.*, 104 Neb. 566.

A loan broker's habitual and general collection of principal and interest and payment of the same over to the holder to whom the broker has sold securities may give rise to an inference that the broker was an actual agent. Restatement, Agency, sec. 43 (2) b, and Neb. Ann. to this section. But if the one who attempts to establish an ostensible agency by these facts did not at the time of his dealings have knowledge thereof and did not rely and act thereon, then such facts are unavailable to him for that purpose. *First Nat. Bank v. Ridpath*, 47 Neb. 96; *Fike v. Ott*, 76 Neb. 439, 443; *Crane v. Gruenewald*, 120 N. Y. 274. However, if the general course of dealing and all other facts and circumstances establish an actual agency, then the principal is bound whether the other relied upon such facts or not. Restatement, Agency, sec. 292a; also sec. 27a; also Neb. Ann. In this case we do not have evidence to establish a reliance by Langdon upon conduct to create an apparent agency of the firm for Haskin, nor do we have sufficient facts and circumstances to establish an actual agency.

Having reached a different conclusion from that of the trial court, the judgment of the district court is reversed and the cause is remanded, with instructions to enter decree in favor of appellant Shriver for the full amount of his mortgage and unpaid interest, subject, however, to Haskin's first mortgage.

REVERSED.