WILLIAM MEIER ET AL., APPELLEES, V. HELEN G. GELDIS ET AL., APPELLANTS.

26 N. W. 2d 813

Filed April 11, 1947.   No. 32179.

*William N. Jamieson,* for appellants.

*Cranny & Moore,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action to foreclose a real estate mortgage on a residence property in the city of Omaha. From a decree in favor of the plaintiffs, ordering a sale of the property to satisfy the lien of the mortgage, the defendants appeal.

The record shows that on May 8, 1940, one Alice G. Ledyard, now deceased, executed and delivered her promissory note to the plaintiffs in the principal amount of $1,500, payable in installments, with interest at six percent from date until maturity and at the rate of eight percent after maturity. The amount due on the note is $1,479.43, which amount is not in issue. The defendants contend that the note and mortgage have been fully paid.

It appears that Alice G. Ledyard conveyed the property in her lifetime to one Mathison, who in turn conveyed it to the defendants Geldis. Payments were made to plaintiffs in accordance with the terms of the note and mortgage until September 12, 1943, at which time there was unpaid the approximate sum of $1,300. On that date defendants paid one John H. Owens the $1,300 by check and received a release of mortgage purportedly signed by plaintiffs. The release was duly recorded. The release was subsequently found to be a forgery. The $1,300 was retained by Owens and converted to his own use. The original note and mortgage were retained at all times by the plaintiffs. It is the contention of defendants that Owens was the agent of plaintiffs, with authority to collect the principal and interest due on the note and mortgage. This is denied by the plaintiffs and constitutes the issue in the present litigation.

The evidence shows that Owens had a power of attorney to act for Alice G. Ledyard in leasing, selling, or mortgaging the property in question and to receive moneys due her from the sale or rental thereof. It appears that in the spring of 1940, Owens sold a farm near Calhoun, Nebraska, on which plaintiffs had a first mort-

gage for $1,000. Owens called at the home of plaintiffs and advised them that the $1,000 mortgage was to be paid off. He then informed plaintiffs that he had a client who desired a loan for $1,500. He gave them the description of the property here involved. Plaintiffs went to Omaha, inspected the property, and made the loan to Mrs. Alice G. Ledyard. The note and mortgage were signed by Mrs. Ledyard and the check for the $1,500 was made payable to her, although it was delivered to Owens. Both principal and interest were payable at Blair, Nebraska, by express provision in the note.

Commencing in 1944, plaintiffs had several dealings with Owens, which the defendants claim constituted such a course of conduct as to authorize Owens to receive the $1,300 check as the agent of the plaintiffs. The transactions relied upon are briefly as follows: On March 28, 1945, Owens obtained $3,000 from plaintiffs on a note and mortgage purporting to be signed by Helen Geldis and George Geldis. The names of the signatories to the note and mortgage proved to be forgeries. On July 20, 1945, Owens obtained $12,000 from plaintiffs on a note and mortgage purporting to be signed by J. T. Maxwell. The signatures on this note and mortgage were also shown to be forgeries. It also appears that subsequent to 1940, Owens obtained $3,200 from plaintiffs on a note and mortgage purporting to be signed by Carl A. Swanson and Caroline G. Swanson. The signatures to this note and mortgage were shown to be forgeries. It further appears that Owens obtained $3,500 and $8,500 from plaintiffs on two mortgages purporting to be signed by Louise Elwood subsequent to 1940, both of which were forgeries. Upon the death of John H. Owens on August 9, 1945, the true nature of the foregoing transactions were first discovered.

The record discloses that when the property in suit was conveyed to the defendants, they took it subject to a mortgage of $500 to Mathison in addition to plaintiffs' mortgage of $1,500. Defendants paid in $20 per month

to Owens to apply on these mortgages. Owens in turn made the payments to plaintiffs on their mortgage as they became due. This he continued to do after converting the $1,300 to his own use. This, of course, is not such conduct as would make Owens the agent of plaintiffs in the collection of the amount due on the mortgage. Plaintiffs knew that Owens held a power of attorney from Alice G. Ledyard and they assumed that he was acting in her behalf. Plaintiffs state that Owens was not their agent in any of the transactions hereinbefore mentioned and that they never paid him a commission or other form of compensation. They did loan money to alleged clients of his and made the checks payable to Owens. While they thereby mistakenly assumed that Owens was honest in all his dealings, such evidence does not make him an agent for collection of a note and mortgage which was not in his possession. The evidence relied upon consists of transactions which occurred long after the one at bar. While we are of the opinion that the evidence does not show that Owens was the agent of plaintiffs in any of the transactions referred to, it certainly is not sufficient to sustain a finding that Owens was the agent of the plaintiffs in accepting the $1,300 due on plaintiffs' mortgage on September 12, 1943.

The question of agency is one of fact and there is no presumption of its existence. The party alleging the existence of the agency relationship assumes the burden of proving the agent's authority and that the acts of the agent, for which liability against the principal is sought, must be shown to be within the scope of the agent's authority. The doctrine of the ostensible authority of an agent can be invoked only by those who have dealt with the agent on the faith of such ostensible authority. Fike v. Ott, 76 Neb. 439, 107 N. W. 774. While we do not think the subsequent transactions referred to herein establish any ostensible authority for Owens to collect the amount due on the note and mort-

gage here in suit, assuming that they did, it could not benefit the defendants in this case for the reason that there is no retroactive evidentiary inference to be drawn from the establishment of the relationship in this manner. At the time of the payment of the $1,300 to Owens, the note and mortgage were not due. Assuming that Owens had authority to collect principal and interest on the note as it became due, this did not authorize him to collect the principal before maturity. Walsh v. Peterson, 59 Neb. 645, 81 N. W. 853; Porter v. Ourada, 51 Neb. 510, 71 N. W. 52. We think that defendants left these funds with their agent, Owens, for the purpose of paying off the mortgage lien, and when Owens embezzled the funds it did not constitute a payment of the mortgage debt. This is particularly so when Owens did not have the note and mortgage in his possession for delivery to defendants upon payment.

It is a cardinal rule that when one of two parties to a transaction must suffer a loss through the misconduct of a third person, the superior equities will be determined from all the material circumstances and the burden will be allowed to fall where equity and justice place it. Omaha Elevator Co. v. Chicago, B. & Q. R. R. Co., 104 Neb. 566, 178 N. W. 211. Under this rule the loss must fall upon the defendants, because by their failure to use ordinary business caution in demanding a return of the note upon its payment, and in dealing with Owens when he did not have the note in his possession, they made it possible for Owens to embezzle the money. It is not the duty of a creditor to seek out his debtor—it is the duty of the debtor to seek his creditor. If defendants had insisted upon the return of the note and mortgage upon their payment, and if they were not produced, for a satisfactory showing as to their ownership and the rights of Owens with reference thereto, Owens would never have been able to perpetrate and conceal the fraud. The defendants negligently failed to exercise the caution to be reasonably expected

under such circumstances. Equity requires that the loss fall upon them. Haskin v. Langdon, 127 Neb. 535, 256 N. W. 8. The judgment of the trial court is correct and it is affirmed.

AFFIRMED.