LILLIAN WAGOUN, APPELLANT, V. CHICAGO, BURLINGTON & QUINCY RAILROAD, APPELLEE.

50 N. W. 2d 810

Filed January 4, 1952. No. 33078.

*Mecham, Stoehr, Moore, Mecham & Hills,* for appellant.

*J. W. Weingarten* and *W. P. Loomis,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant sued appellee for damages on account of personal injuries claimed to have been sustained by her because of negligence of appellee. Appellant was at the time she received the alleged injuries an employee of

appellee, an interstate common carrier, and she based her action on the provisions of the Federal Employers' Liability Act. 45 U. S. C. A., § 51, p. 118.

At the conclusion of all the evidence, appellee requested the court to instruct the jury to return a verdict for it. The motion was denied. The jury returned a verdict for appellant and judgment was rendered and entered for her and against appellee for the amount of the verdict. Appellee moved the court to set aside the verdict, vacate the judgment, and render a judgment of dismissal of the case notwithstanding the verdict, or, in the alternative, to grant the appellee a new trial of the case for the reasons assigned in that part of the motion. The motion for a new trial was denied and the motion for a judgment for appellee was sustained. This appeal challenges the correctness of the judgment of dismissal of the case.

The petition of appellant sufficiently alleged a cause of action against appellee for the recovery of damages because of injuries negligently caused her on April 18, 1946, while she was performing services for appellee within the scope of her employment in cleaning and conditioning equipment used regularly by appellee in its interstate transportation business.

Appellee in bar thereof pleaded that in June 1947, appellant made claim against it for the injuries described in the petition and claimed to have been sustained by her on April 18, 1946, while employed by appellee; that it on August 15, 1947, compromised and settled all claims and demands made by appellant, including the cause of action alleged in her petition; that she released appellee from all liability to her by instrument in writing duly executed and delivered; and that appellee paid to her and she received and accepted at that time and for that purpose, $3,000 as full and sole consideration for the compromise, settlement, and release.

Appellant by reply asserted that the attorneys of Minneapolis, Minnesota, employed by her on account of her

claim against appellee, solicited the employment; that they conspired with appellee to obtain a settlement of her claim; that in furtherance of the conspiracy they willfully and falsely represented to her that they had ascertained that she would be physically able to return to work within a month; that she would be given and have the right to return to the position she had with appellee on April 18, 1946, the date of the accident, with full seniority rights; that she would be paid $3,000; that each of these matters was contained in an instrument presented to her for her signature; that she could not and did not read the instrument; that it was incorrectly read to her by her attorney; that she relied and acted upon the information given her as aforesaid, and because thereof she signed the instrument pleaded and relied upon by appellee as a release herein; that said instrument did not contain any of the terms and provisions stated to her as the basis of the settlement, except the fact that she would be paid $3,000; that appellee refused to restore her to her seniority rights; that appellant has been disabled continuously since April 18, 1946; that when she learned the falsity of the representations made to her as alleged, she tendered return of the money received by her and has continued the tender thereof; and that the release was without consideration, was obtained by fraud, and as the result of a mistake of fact.

It was the province and duty of the district court, in the situation presented by the record after the motion for a judgment notwithstanding the verdict was made, to re-examine the entire material evidence, and if it was found insufficient to support the verdict to sustain the motion, to set aside the verdict, and to render a judgment of dismissal of the case. The appeal requires this court to consider the entire record and determine the correctness or incorrectness of the conclusion of the trial court that the evidence was not sufficient to sustain the verdict returned and the judgment rendered thereon. § 25-1315.02, R. R. S. 1943; Krepcik v. Interstate Transit Lines,

152 Neb. 39, 40 N. W. 2d 252; Hamilton v. Omaha & Council Bluffs St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139.

Appellant was employed by appellee as a passenger coach and mail car cleaner. She was the victim of an an accident and suffered injuries on the 18th day of April 1946, while cleaning a mail car used by appellee in the conduct of its interstate transportation business. More than a year thereafter she was located and solicited by a representative of the law firm of Davis, Michel, Yaeger and McGinley of Minneapolis, Minnesota, to employ them to represent her in presenting and pressing her claim on account of the accident against appellee, and on the 21st day of June 1947, this firm by instrument in writing was engaged by her to prosecute her claim to settlement or judgment.

These attorneys for more than 20 years before and including 1947 specialized in the procurement, settlement, and trial of personal injury and death claims of railroad employees arising under the Federal Employers' Liability Act. Their clients were confined to claimants or plaintiffs. They were never engaged by, and never represented any railroad company, and in particular they never in any manner represented or acted for the Chicago, Burlington & Quincy Railroad Company. They were regional counsel for the Brotherhood of Railroad Trainmen. Included in its membership were conductors, brakemen, switchmen, switch tenders, flagmen, and trainmasters. The members of the law division, the members of the claim department, and management personnel of railroad companies were not members of the Brotherhood. The contact of the representative of the law firm and appellant resulted from a suggestion of an alleged switchman of appellee who was a member of the Brotherhood to the representative to call appellant and discuss her matter. The alleged switchman was not more definitely identified, his name was unknown, and he could not be located.

C. S. McGinley, a member of the Minneapolis law firm,

handled the claim after the contract of employment was made by appellant. He notified appellee by letter of June 23, 1947, that his firm represented her. The original letter was sent to F. L. Given, assistant general adjuster of appellee at Omaha, and a copy of it was sent to Tom Smiley, general adjuster at Chicago. This is the first communication of any kind or character the firm, McGinley, or any other person connected with that firm had with appellee or any representative of it concerning appellant or any matter in which she was interested. The second communication was about August 1, 1947, when McGinley and Smiley discussed the claim of appellant but reached no conclusion concerning it. Given had charge of the settlement and adjustment of personal injury claims against appellee arising at Omaha and on its lines west of that city, a fact known to the Minneapolis law firm. Sometime after the McGinley and Smiley conversation, McGinley talked with Given by telephone and asked him if he could and would come to Minneapolis on a specified date for a discussion of the claim of appellant looking towards a possible settlement thereof, and in that conversation he was advised that appellant would then be in that city on the date named.

Given went to Minneapolis, and saw and negotiated with McGinley concerning a settlement of the claim. He was there two days. He and McGinley met and negotiated at different times during those days. The result of the negotiations was that Given finally offered $3,000 as a compromise settlement and discharge of all claims of appellant against appellee, and no other thing or consideration. Sometime after the offer was made, McGinley advised him that appellant would accept the offer as made. A release to that effect was prepared by Given and left with McGinley. Appellant executed it and Given delivered to McGinley a check of appellee for $3,000, payable to the order of appellant and her attorneys, and McGinley surrendered the release of appel-

lant to Given. The check was endorsed by the payees and cashed.

Given was the only person who in any way acted for appellee in reference to the claim and settlement thereof after notice from McGinley that his firm had been employed by appellant, except the conversation had by Smiley with McGinley. Given did not meet or communicate with appellant and was not in her presence until long after the settlement of her claim on August 15, 1947. He, or any other person connected in any way with appellee, made no offer or representation to appellant or her attorneys, or any of them, that appellee would employ appellant after the settlement in any capacity or for any purpose, or that her seniority rights as an employee of appellee would be restored and continued. Appellant produced no evidence that anyone other than McGinley made any such offer, statement, or representation. The offer given and made in the settlement of the claim was $3,000 to appellant as the sole and full consideration for the final disposition and release of all her claims against appellee. The release executed by appellant correctly recites and evidences the offer of settlement as made and consummated on the 15th day of August 1947. Any statement or representation contrary to the terms of the release made to appellant was by McGinley outside of the presence and without the knowledge of Given or any other representative of the railroad company. It is not even claimed in this case that the unidentified switchman with whom the solicitor for the Minneapolis attorneys claimed to have talked made any such statements. There is no evidence to support the allegations of the reply that the settlement and release of the claim of appellant was the result of fraud, misrepresentation, or mutual mistake.

A person may not be held liable for fraudulent representations not made, authorized, or participated in by him. Spies v. Stein, 70 Neb. 641, 97 N. W. 752; Atlas Land Co. v. Hendriks, 298 F. 589; Loverin v. Kuhne, 94

Conn. 219, 108 A. 554, 33 A. L. R. 848; Humphrey v. Baron, 223 Iowa 735, 273 N. W. 856; 37 C. J. S., Fraud, § 61, p. 346; 23 Am. Jur., Fraud and Deceit, § 184, p. 1006.

The responsibility of appellee for any misrepresentations made by McGinley to appellant rests on the claim that appellee conspired with the Minneapolis attorneys in general and with McGinley in particular, and that these attorneys were employed to and did represent appellee. The only evidence from which appellant deduces these conclusions is that the representative of the Minneapolis attorneys received a suggestion from an employee of appellee that the representative call appellant and discuss her matter. The employee was identified and characterized only as a switchman and a member of the Brotherhood of Railroad Trainmen. Beyond that there is nothing to show his status, duties, or authority. Without more than appears here it must be concluded that he had the duty and authority to act in the switching of railroad rolling equipment and none whatever to handle claims against or engage lawyers for appellee. The whole theory of the Minneapolis attorneys or any of them representing and conspiring with appellee, as well as the contention that the settlement of the claim by appellee was procured by fraud, is without support except the oft-repeated assertion thereof in the argument of appellant. The authority of one person to speak or act for and bind another is a question of fact. There is no presumption of its existence. Anyone relying on the act of one claimed to be an agent has the burden of proving authority of the agent. In Meier v. Geldis, 148 Neb. 234, 26 N. W. 2d 813, it is said: "The question of agency is one of fact and there is no presumption of its existence. The party alleging the existence of the agency relationship assumes the burden of proving the agent's authority and that the acts of the agent, for which liability against the principal is sought, must be shown to be within the scope of the agent's authority." See, also, Bartholomew v. Skelly Oil Co., 144 Neb. 51, 12 N.

W. 2d 122; Trephagen v. City of South Omaha, 69 Neb. 577, 96 N. W. 248, 111 Am. S. R. 570.

The principle involved in the doctrine that misrepresentations concerning the nature and extent of the injury made by the physician of a releasor do not constitute a basis for avoidance of the release of a claim for personal injuries because the releasee is not responsible for the representations or advice of such physician is applicable to the situation in this case. Colorado Co. v. Huntling, 66 Colo. 515, 181 P. 129, was an action to set aside a release on the grounds of fraud, misconduct, and undue influence, and to recover damage for personal injuries. The court said the allegations of fraud, misconduct, and undue influence: "If intended to apply to Drs. Allen and McKinnie, they are without force until sufficient evidence be adduced to justify the jury in finding that these doctors were in the employ of the company. The proof here not only fails, but conclusively shows the contrary. Plaintiff's first employment of an adviser was that of Judge Orr, her attorney. Through him she employed Dr. Allen. Through Dr. Allen, she employed Dr. McKinnie. * * * If the physician referred to is Dr. Allen, then no advice given by him and no reliance placed upon his representations can form any basis for the recovery, because he was her physician, and for his representations and advice the company is not responsible." Likewise in this case. any reliance of appellant upon representations, statements, and conduct of McGinley affords no basis for impeachment of the settlement and release of the claim of appellant because McGinley was not a representative of appellee and had no authority or right to speak or act for it. As an actor concerning the matters involved in this case, he was attorney for appellant. See, also, Lipscomb v. Houston Electric Co. (Tex. Civ. App.), 149 S. W. 2d 1042; Jordan v. Guerra, 23 Cal. 2d 469, 144 P. 2d 349; Annotation, 48 A. L. R. 1462; 117 A. L. R. 1022.

The appellant failed to impeach the legality and effec-

tiveness of the settlement and discharge of her claim against appellee. The motion of appellee made after the verdict was properly granted.

The judgment of the district court should be, and it is, affirmed.

AFFIRMED.