NEBRASKA TRACTOR & EQUIPMENT COMPANY, A CORPORATION, APPELLEE, v. GREAT LAKES PIPE LINE COMPANY, A CORPORATION, ET AL., APPELLANTS.

56 N. W. 2d 288

Filed January 2, 1953. No. 33217

*Smith & Smith,* for appellants.

*Leo Eisenstatt* and *Kennedy, Holland, DeLacy & Svoboda,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Nebraska Tractor & Equipment Company, a corporation, plaintiff and appellee, against Great Lakes Pipe Line Company, a corporation, and W. J. Lank, Jr., named defendants. The action appears

not to have been prosecuted against the defendant Lank, hence for the purposes of this opinion Great Lakes Pipe Line Company will be referred to as defendant and appellant.

The petition contains two causes of action both of which are on contract. For the first cause of action the plaintiff alleged there was due it from the defendant $5,041 for rent for the use of a Caterpillar Model D-8 Crawler Tractor and for incidental expenses under the terms of an equipment lease contract entered into on or about August 8, 1950. This equipment will, for convenience, be hereinafter referred to as the tractor. For the second cause of action plaintiff alleged that there was due it from the defendant $400 for rent for the use of a Semi-Trailer Transport also under the terms of an equipment lease contract entered into on or about July 6, 1950. For convenience this equipment will be referred to as the trailer.

The cause was tried to a jury and a verdict was returned in favor of the plaintiff for $2,620.50 on the first cause of action and for $400 on the second. Judgment was duly entered on the verdict.

At the conclusion of plaintiff's evidence in chief and at the conclusion of all of the evidence the defendant moved in the alternative for a directed verdict or for dismissal separately as to the two causes of action. These motions were overruled. At the conclusion of all of the evidence the plaintiff moved in the alternative for a directed verdict or judgment in its favor separately on the two causes of action. This motion was overruled. After verdict the defendant moved for judgment notwithstanding the verdict in its favor or for a new trial as to both causes of action. The plaintiff moved for judgment notwithstanding the verdict as to the first cause of action. These motions were overruled.

From the judgment and the order overruling its motion for judgment notwithstanding the verdict or for a new trial the defendant has appealed. From the judg-

ment as to the first cause of action and from the order overruling the motion for judgment notwithstanding the verdict as to it the plaintiff has cross-appealed.

In order to comprehensively consider and delineate the factual situations involved it appears advisable to consider the two causes of action in reverse order of their appearance in the petition. This permits consideration of pertinent events in sequence.

The pleadings and the record disclose that during the period under consideration here the plaintiff was engaged in the business of selling and leasing equipment such as is involved in the two causes of action. The defendant is engaged in the business of transportation of petroleum and petroleum products and the operation and maintenance of pipe lines, pipe line terminals, distribution centers, and facilities. One of its facilities and terminals is in the vicinity of Omaha, Nebraska, partly in Nebraska and partly in Iowa. During the times in question it was enlarging and extending this terminal and these facilities. The work of construction was being performed under contracts with contractors. The construction material which was necessary to be brought in was shipped in by the defendant and stored. The contractors removed it from storage when it became necessary for them to use it in construction. None of the work of construction was performed by the defendant.

W. J. Lank, Jr., was employed by the defendant as its resident engineer. In general his duties were to supervise for the defendant the work of the contractors as it was being performed; inspect and estimate the amount or amounts of performance under the contracts, and report to his superiors who were in Kansas City, Missouri; and inspect, advise, and direct as to work performance and qualities of the employees of the contractors.

Apparently on July 6, 1950, a written lease agreement was prepared and signed by the terms of which the plaintiff leased the trailer in question to the defendant

for a period of four months beginning July 17, 1950. The stated monthly rental was $400. The agreement contained an option to purchase and an agreement that the value of the trailer was $4,186. The agreement was signed, "Nebraska Tractor & Equipment Company By Bernie Tapelt" and "Great Lakes Pipe Line Company By W. J. Lank, Jr." It was approved July 20, 1950, by M. L. Greer, sales manager for the plaintiff. It was never approved by any officer or employee of the defendant superior in authority to Lank. None of these had any knowledge of the transaction.

Delivery of the trailer was made at Cedar Rapids, Iowa, on or about July 18, 1950. To whom delivery was actually made does not clearly appear but it reasonably appears that it was made under the direction of Lank. It was however without the knowledge or sanction of any officer or employee of the defendant superior to Lank.

The trailer was brought to the property of the defendant. To what extent it was used thereon does not clearly appear. No payment for any of the rental specified in the agreement was ever made, although the agreement provided for payment monthly in advance.

Lank notified the plaintiff that the defendant had no further use for the trailer and on or about August 8, 1950, he purchased the trailer under conditional sales contract from the plaintiff for the Valley Coal Company.

It was on account of this transaction that the claim and second cause of action against the defendant is for rental for one month or $400 instead of for four months or $1,600.

As to the first cause of action, Lank on August 8, 1950, without knowledge of or authority from any officer of the defendant or of any employee thereof superior to him, in the name of the defendant, entered into a lease agreement for the tractor. The agreement contained an option to purchase. The lease period was for four months beginning August 8, 1950, and the agreed

rental was $1,190.25 a month. The agreed value of the tractor was $13,500. The agreement was signed, "Nebraska Tractor & Equipment Company By W. R. Reisser" and "Great Lakes Pipe Line Company By W. J. Lank, Jr." The use on behalf of the defendant does not clearly appear. No payment was ever made pursuant to the agreement. This agreement also provided for payment monthly in advance. The cause of action is for rental for four months plus expense for reconditioning the tractor.

The reason given by the plaintiff for failure to exact payment in advance as provided in the agreements was that Lank represented that it was the policy of the defendant not to make monthly payments on lease equipment in advance but after monthly use. This explanation and arrangement was acceptable to the plaintiff. The defendant was billed but at the direction of Lank the bills were not sent to the home office of the defendant from which payment must come but to the office at East Omaha, that being the station of Lank.

The defendant had no knowledge of either of the agreements or of any of the transactions carried on thereunder or of the receipt or use of the trailer and tractor, unless it may be said that the knowledge of Lank was attributable to it, until about August 23, 1950. At this time the defendant obtained information that Lank was negotiating for the purchase of other machinery. An investigation was immediately instituted. During the progress of the investigation M. L. Greer, sales manager for the plaintiff, saw the tractor in question near Waterloo, Nebraska, and knowing that the defendant had no facilities at that location became concerned and on September 7 or 8, 1950, called and talked to the construction superintendent of the defendant at Kansas City. As a result of this investigation the agreements were discovered. Lank was promptly discharged. About September 11, 1950, plaintiff regained possession of the trailer and thereafter retained it. The tractor

was repossessed probably between September 8 and 20, 1950.

The two causes of action as pleaded are predicated upon the proposition that Lank as managing engineer of the defendant had authority to enter into these agreements on behalf of the defendant.

The defense is predicated upon the proposition that these are not agreements of the defendant and are not binding upon it or valid for the reason that they were not authorized and Lank had no real, apparent, or ostensible authority to enter into them on behalf of the defendant and that they have not been ratified.

In response to the pleaded defense the plaintiff states that Lank by reason of his position and custom was clothed with ostensible or apparent authority to enter into these contracts with the plaintiff and that because thereof the defendant is estopped to deny his authority.

By the record it is made certain that Lank had no actual authority to enter into these agreements. Also by the record it is made certain that there was no ratification of the agreements by the defendant.

The right of plaintiff therefore to recover and coincidentally the question of whether or not the court erred in overruling the motion of the defendant for judgment notwithstanding the verdict must depend upon whether or not the evidence under the law discloses an apparent or ostensible authority to enter into the two agreements and bind the defendant thereby.

In addition to what has already been said herein as to the facts the record does not disclose that the plaintiff ever investigated the authority of Lank to enter into these or other agreements or that it made any inquiry in relation thereto.

Before the first agreement was entered into Lank called the office of plaintiff whereupon a salesman was sent to see him about the acquisition of a trailer. It is apparent that in a conversation between Lank and the salesman purchase as well as lease was discussed. The

salesman made a note of the conversation as follows: "Above gave me an order for GPX Transport trailer. Said they would purchase it but to get by the front office would have to rent it the first 4 months at book or 10% of purchase price rental." The plaintiff knew that Lank was the resident engineer at this location. It also knew that the operations of the defendant were extensive and extended over a large area and that of course it had to function through officers, agents, and employees. There is no evidence that the plaintiff had at the time information of other and similar transactions handled by Lank.

This substantially reflects all of the facts and circumstances of which plaintiff had knowledge regarding Lank's actual, apparent, or ostensible authority to make these agreements at the times when they were executed.

On the trial of the case the plaintiff was allowed to adduce testimony of a witness who was a salesman from a company engaged in business similar to that of the plaintiff substantially that in his opinion agreeable to usage and custom the plaintiff had the right to assume that Lank had authority to enter into the agreements in question and to bind the defendant thereby. This opinion was not based on custom and usage in the business of defendant or of other or similar businesses.

In addition to what has been reflected in the foregoing outline of the facts the evidence of the defendant effectually points out that Lank had, as has been already pointed out, no actual authority to enter into any such agreements on behalf of the defendant; that he had never done so with its knowledge or consent; that none had been entered into which had been later ratified; that contracts involving substantial amounts required approval from the Kansas City office; and that such authority as he had to contract without approval of the Kansas City office was after a named date specifically limited to $100 and before that date the amount was understood to be $100 but there was no record fixing the limitation.

Amounts in excess of $100 were paid out. Whether or not some of them were without previous authorization from the Kansas City office is not known. It is shown however that Lank was in daily communication with the Kansas City office with regard to the work carried on under his supervision. In any event this was not a matter which had come to the attention of the plaintiff up to the time the agreements had been executed and approved by it.

The foregoing, it is thought, is a fair résumé of the pertinent and controlling facts. Upon them and the application of controlling principles of law the rights and liabilities of the parties must depend.

The point of first consideration is that of the agency of Lank for the defendant and his authority as such agent. He was unquestionably an agent. Proof of agency alone however is not sufficient to charge a principal with the acts of the agent. In addition it must be shown that the act for which one seeks to hold the principal liable came within the scope of the agent's authority.

In Meier v. Geldis, 148 Neb. 234, 26 N. W. 2d 813, it was said: "The question of agency is one of fact and there is no presumption of its existence. The party alleging the existence of the agency relationship assumes the burden of proving the agent's authority and that the acts of the agent, for which liability against the principal is sought, must be shown to be within the scope of the agent's authority." See, also, Bartholomew v. Skelly Oil Co., 144 Neb. 51, 12 N. W. 2d 122; Wagoun v. Chicago, B. & Q. R. R., 155 Neb. 132, 50 N. W. 2d 810; 2 Am. Jur., Agency, § 95, p. 76; 2 C. J. S., Agency, § 93 (2), p. 1196.

The proof in this case considered most favorably to the plaintiff negatives the existence of actual authority in Lank to enter into these contracts on behalf of the defendant.

If then the defendant is to be bound this must be so

on the basis of ostensible or apparent authority. This court has treated ostensible and apparent agency as synonymous. In Ware v. Home Mutual Ins. Ass'n, 135 Neb. 329, 281 N. W. 617, by quotation from 2 C. J., Agency, § 14, p. 427, it was said: " 'An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him.' "

As to the authority of an ostensible agent this court by quotation from 2 C. J., Agency, § 212, p. 573, said in this same case: " 'Ostensible authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency.' " Cited also were Thomson v. Shelton, 49 Neb. 644, 68 N. W. 1055; Phoenix Ins. Co. v. Walter, 51 Neb. 182, 70 N. W. 938; Northwest Thresher Co. v. Eddyville State Bank, 80 Neb. 377, 114 N. W. 291.

It is pointed out in the reported cases that the act or the failure to act on the part of the principal which will give rise to the ostensible or apparent agency must be with regard to something which has been called to the attention of the third person on which he reasonably had the right to rely.

The correct rule is the following: "Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority. * * *." Johnston v. Milwaukee & Wyoming Investment Co., 46 Neb. 480, 64 N. W. 1100. See, also, Holt v. Schneider, 57 Neb. 523, 77 N. W. 1086; Mahaffy v. Hansen Live Stock & Feeding Co., 105 Neb. 9, 178 N. W. 829; Haskin

v. Langdon, 127 Neb. 535, 256 N. W. 8; 2 Am. Jur., Agency, § 104, p. 86.

In this case there was no affirmative act or acts of the defendant which could be pointed to indicating ostensible authority in Lank to enter into these contracts on behalf of the defendant except that he was resident engineer on this project. That was the only information that the plaintiff possessed. Furthermore there is no authentic indication that the plaintiff sought any further information in this respect. Also it is apparent that plaintiff was not in possession of knowledge of the manner or custom of the defendant in the handling of like or similar matters. Any such information as it had at the time of the trial came after the execution of the contracts and not before.

On the question of failure of the defendant it becomes apparent that the defendant did not fail to act in any wise which would justify the plaintiff in a conclusion that Lank had ostensible authority to bind it by these contracts.

In the absence of an apparent situation which demands the disclosure of the limitations upon the authority of an agent, a principal is not bound at his peril to disclose those limitations. Rather the burden is on the person dealing with a known agent, not to deal blindly and trust the agent's representations as to the extent of his powers, but to use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers. The rule is well stated as follows in 2 Am. Jur., Agency, § 95, p. 76: "A person dealing with a known agent is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers; such person must not act negligently, but must use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers. In other words, a person dealing with an agent assumes the risk of lack of authority in the agent. He cannot charge the principal by relying upon the

agent's assumption of authority which proves to be unfounded. The principal, on the other hand, may act on the presumption that third persons dealing with his agent will not be negligent in failing to ascertain the extent of his authority as well as the existence of his agency." Cases cited from numerous jurisdictions abundantly support the stated principle.

The conclusion is unavoidable in these instances that the plaintiff blindly trusted that Lank had authority from the defendant to execute the contracts. The record does not even disclose that inquiry was ever made of Lank as to his authority. Insofar as the record is concerned the plaintiff assumed from what it could see alone that Lank had authority to execute these agreements and bind the defendant.

It cannot therefore be said that there was any act or failure to act on the part of the defendant which created in Lank an ostensible or apparent agency on which in these instances the plaintiff had the right to rely. Unless it may be said that there was evidence of custom and usage which created in Lank an ostensible or apparent agency there was nothing by which the defendant could be bound. We think there was no such evidence.

It is true, as pointed out in Johnston v. Milwaukee & Wyoming Investment Co., *supra,* that usage and custom is an element which is to be considered in determining whether or not an ostensible or apparent agency exists, but it must be considered along with the other essential elements such as a voluntary act or failure to act on the part of the principal, knowledge at the time of custom and usages of the particular business by a third person, and ordinary prudence on the part of the third person in the light of his knowledge or lack of knowledge.

There was no culpable voluntary act or failure to act on the part of the defendant in placing Lank in the position he held and in clothing him with the authority which he had as has been herein described. On the part

of the plaintiff there is an absence of evidence that prior to the execution of these contracts it was conversant with the business usages or of the nature of the particular business in which the defendant was engaged or that it sought information in relation thereto or that it acted with ordinary prudence in presuming that Lank had authority to bind the defendant by these contracts.

These conclusions leave the claimed authority of Lank to bind the defendant without evidentiary support. This being true, and authority being an essential element of plaintiff's causes of action, it must be said that proof of the causes of action failed. It then became the duty of the district court to sustain the motion of defendant for a directed verdict. On account of its failure in this respect it then became its duty to sustain the motion for judgment notwithstanding the verdict. This failure requires a reversal here. In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523; Wagoun v. Chicago, B. & Q. R. R., *supra.*

This determination renders a consideration of the other questions raised by the appeal and those raised by the cross-appeal unnecessary.

The judgment of the district court is reversed and the cause remanded with directions to render judgment notwithstanding the verdict in favor of the defendant and against the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.