WOLFSON CAR LEASING COMPANY, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS WOLFSON USED CARS, APPELLEE, V. PAM WEBERG ET AL., APPELLANTS.

264 N. W. 2d 178

Filed March 29, 1978. No. 41324.

James E. McCarthy and Marks, Clare, Hopkins & Rauth, for appellants.

Thomas F. Dowd, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

This is an appeal from the denial of the defendants-appellants' counterclaims in replevin actions. In finding for the plaintiff in these actions, the municipal court held that the certificates of title to each of the used cars in issue always remained in the name of the plaintiff with the exception that, in one instance, title was transferred on the certificate, but

the certificate remained in plaintiff's possession. The court also held that the defendants were not innocent purchasers and that plaintiff's agent was not a "merchant" within the scope of section 2-104, U. C. C. In their counterclaims, defendants raised agency and negligence issues. The court denied the counterclaims without specific findings. On appeal, the District Court affirmed the judgment of the municipal court both as to the granting of replevin and denial of the counterclaims. On this appeal, defendants do not challenge the lower court findings in respect to the certificates of title and the granting of replevin. The defendants' appeal is limited to the denial of its counterclaims.

The plaintiff is a Nebraska corporation dealing in used cars. Plaintiff's sole place of business is a lot which at times has over 200 cars on it. In August of 1974, Harry Wolfson, president of plaintiff corporation, hired Robert Silliman as salesman. Silliman was employed until August 1975. Wolfson made no inquiries into Silliman's background and did not ask for references.

The duties and authority of Silliman consisted of the negotiation of the sale of used cars on behalf of Wolfson in price ranges from $200 to $300 above wholesale, the movement of used cars to various reconditioning facilities, and the physical delivery of certificates of title to the purchasers upon approval of the sales by Harry Wolfson. Silliman did not have access to the certificates of title; Wolfson himself notarized the titles upon receiving the purchase price of a car. The titles were either in the physical possession and control of Wolfson's bookkeeper or the bank which financed the inventory. Silliman did have authority to take cars off the lot and let the prospective purchasers use the cars for a period of time. Along with such authority, he had access to and authority to use intransit stickers and dealer plates.

In late 1974, Silliman became acquainted with a Montgomery Ward store employee. He approached this employee at the store and indicated he had cars to sell, representing himself to be a broker for the United States Steel Corporation. Silliman alleged the cars had been leased by the Hertz Rent-A-Car Corporation to United States Steel Corporation and he was now authorized to sell the cars. Since the vehicles were high-mileage and not reconditioned, Silliman offered to sell them at wholesale or below. The Montgomery Ward employee believed Silliman and purchased a car.

A number of other Montgomery Ward employees heard about the transaction. Subsequently, Silliman sold cars to interested employees until August of 1975. The defendants herein include a number of these employees. Other defendants include a policeman, postal inspector, real estate salesman, and mechanic. The price paid for the cars was below wholesale. The average difference between the actual price paid and the wholesale price was $700. The buyers either paid Silliman cash or issued checks payable to him. The buyers were given a receipt written on notepaper and signed by Silliman. Silliman transferred possession of the cars and furnished keys, intransit stickers, and, in some instances, dealer plates. While title passed to some of the purchasers, none of the defendants herein received title. When the defendants asked about title, Silliman informed them they had to be processed by Hertz Rent-A-Car in New York City causing a 5 to 6 week delay.

All parties agree that Harry Wolfson had no actual knowledge that Silliman was selling Wolfson cars by misrepresentation. Silliman's scheme became known to both Wolfson and the defendants when Silliman absconded with some purchase money in late August 1975. Wolfson never received any proceeds from the sales to defendants. In his dealings with

the defendants, Silliman never represented himself as an agent for Wolfson. The only reference to Wolfson made by Silliman to the defendants was that the cars had to be sold through a licensed dealer such as Wolfson.

Defendants did make an effort to inquire about Silliman's authority. Silliman was listed in the Omaha city directory as a broker for United States Steel Corporation. The defendants checked Silliman's credit rating with the Montgomery Ward credit department. Inquiry was made with the Douglas County sheriff's department to see if the vehicles Silliman offered for sale were on the stolen vehicles list. Defendants did not ask Silliman to verify that he was an agent of United States Steel Corporation, nor did they contact that corporation. Some of the defendants had been informed that Silliman was observed on the Wolfson car lot; no effort was made to contact Wolfson.

The defendants claim that the plaintiff is responsible for their monetary losses resulting from this scheme because the plaintiff's negligent control of his agent's activities contributed directly to the agent's ability to perpetrate the fraud. It is alleged Wolfson breached his duty to the public to use due care in the selection and supervision of his agent, Silliman. According to defendants' theory, this breach of duty was the proximate cause of their loss.

Although defendants allege that Wolfson's practices of allowing his agent to remove cars from the lot for periods of time and accounting for inventory contributed directly to defendants' losses, no evidence was offered as to the standard of due care ordinarily utilized in the used car business. Defendants urge such evidence is unnecessary and rely on the allegation that Wolfson violated section 60-1417, R. S. Supp., 1976. Such statute provides: "Every motor vehicle, * * * sale * * * shall be evidenced by an instrument in writing upon a form * * * approved

by the Attorney General which shall contain all the agreements of the parties and shall be signed by the buyer and seller or a duly acknowledged agent of the seller." There is no evidence in the record to support such an allegation. Even if it were true that Wolfson's practices conflicted with this statutory requirement, the filling out of buyer-seller forms is unrelated to the transactions of the defendants. Since Silliman was avoiding disclosure of his true agency, he did not use standard forms, particularly ones which might bear a reference to Wolfson.

The defendants also ask us to hold that section 60-105, R. R. S. 1943, of the Certificate of Title Act, has no application in determining the defendants' claim. We cannot so hold. Section 60-105, R. R. S. 1943, states: "No person, * * * shall acquire any right, title, claim, or interest in or to such motor vehicle, * * * until he shall have had delivered to him physical possession of such motor vehicle, * * * and a certificate of title * * *." We have stated that the purpose of this act is to provide a means of identifying motor vehicles, ascertaining motor vehicle owners, and preventing theft of motor vehicles and fraud in the transfer of motor vehicles. See, First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co., 196 Neb. 595, 244 N. W. 2d 209; State Farm Mut. Auto Ins. Co. v. Drawbaugh, 159 Neb. 149, 65 N. W. 2d 542; Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483. This statutory scheme is the exclusive means of transferring title.

The passage of title of the automobile is so inherent in the transfer of the vehicle we cannot divorce the question of plaintiff's negligence from the Certificate of Title Act. The evidence is clear that Harry Wolfson, and not Silliman, had control of the certificates of title. Since no legal ownership is acquired without a duly notarized certificate and Wolfson retained such control, we cannot say from the record that Wolfson was negligent and therefore responsible for defendants' losses.

Even if we found Wolfson to be negligent, we would have to resolve the issue of defendants' contributory negligence. The issue becomes whether the defendants exercised reasonable care in their dealings with Silliman. The defendants did attempt to check Silliman's authority. However, no attempts were made to contact United States Steel Corporation. The defendants did not contact Wolfson when put on notice that he was somehow involved. The Certificate of Title Act again comes into play. Defendants accepted the cars without titles. Admittedly, they were misled into believing that title would arrive eventually because others who had bought cars from Silliman had received titles. However, some of these titles had an obvious superimposed tape with "Hertz Rent-A-Car" typed on the tape. Underneath was the name of Wolfson. Possession of a certificate of title is as significant as possession of the car. The defendants were negligent in accepting and paying for cars without receiving title.

The defendants also urge us to find that they are entitled to recovery under the doctrines of actual and apparent authority. The party alleging the existence of the agency relationship has the burden of proving the agent's authority and the agent's acts, for which liability against the principal is sought, are within the scope of the agent's authority. See, J. R. Watkins Co. v. Wiley, 184 Neb. 144, 165 N. W. 2d 585; Nebraska Tractor & Equipment Co. v. Great Lakes Pipe Line Co., 156 Neb. 366, 56 N. W. 2d 288. The defendants did not sustain this burden of proof. The evidence reveals that Silliman, as an agent of Wolfson, had authority to negotiate sales of cars for a price of $200 to $300 above wholesale. He sold the cars to the defendants for an average of $700 below wholesale. Silliman always represented himself as an agent for United States Steel Corporation, not as an agent of the plaintiff. When Silliman negotiated

with defendants, it is clear he was not acting pursuant to the actual authority given to him by Wolfson. Silliman was acting only for his own interests. A principal is liable to third persons for the torts of his agent when committed in the course and within the scope of the agency, although the principal never authorized, participated in, or ratified the tort; but he is not liable where the tortious act was committed, not in furtherance of the principal's business, but for a purpose personal to the agent himself. See Division No. 1, Railway Employees' Department, A. F. L. v. American State Bank, 113 Neb. 196, 202 N. W. 632.

Apparent or ostensible authority to act as an agent may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent agency. See Bliss v. Falke, 125 Neb. 400, 250 N. W. 250. We have already held that the principal, Wolfson, was not negligent. Wolfson could not have affirmatively or intentionally clothed Silliman with the authority he represented to defendants because he lacked knowledge of Silliman's dealings. Apparent or ostensible authority or agency for which a principal may be liable must be traceable to him and cannot be established by the acts, declarations, or conduct of an agent. See, Rodine v. Iowa Home Mut. Cas. Co., 171 Neb. 263, 106 N. W. 2d 391; Plummer v. National Leasing Corp., 173 Neb. 557, 114 N. W. 2d 21. The defendants testified that they at all times believed Silliman to be the agent of United States Steel Corporation and not the agent of Wolfson. Wolfson had no knowledge of Silliman's scheme. The ostensible authority is not traceable to him.

Defendants rely on the case of Oleson v. Albers, 130 Neb. 823, 266 N. W. 632. In Oleson, a seller sought to recover from the buyer the purchase price of corn. The corn had been delivered to the buyer by seller's agent. The buyer had paid the agent,

who absconded with the money. This court did say that an agent of the owner of goods, entrusted with the possession thereof for the purpose of selling and delivering the same, has authority, upon the sale of the goods, to collect and receive the purchase price, and payment to such agent discharges the liability of the buyer; and this is so whether or not the agency be known or disclosed to the buyer. We also held that an agent having possession of commodities which he is authorized to sell has implied authority to receive or collect payment therefor. Oleson is distinguishable from the case at bar. In Oleson, there is some evidence that the buyer knew the identity of the owner-principal. The main distinguishing element of the present case is again the fact that automobile ownership is evidenced by a certificate of title. In Oleson, the possession of the corn, coupled with payment to the seller's agent, was sufficient to complete the transaction for the buyer. The defendants here had mere possession of the vehicles. If the defendants had received titles as well as possession they would be in a position similar to the buyer in Oleson.

The defendants contend they are entitled to recover the money they spent on repairs for the cars under a theory of unjust enrichment. The law of restitution and unjust enrichment deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly suffer loss. Ladenburger v. Platte Valley Bank of North Bend, 180 Neb. 167, 141 N. W. 2d 766. There is evidence that the defendants made repairs on the cars they purchased from Silliman. Wolfson has benefited at the expense of the defendants since the repaired cars are now in his possession. However, only one of the defendants on this appeal has counterclaimed for damages above the purchase price of the car. Thus, we can only consider the claim of this defendant, Jerry Menousek.

The evidence shows that the defendant Menousek paid Silliman $1,700 for a car. His counterclaim asked for damages of $2,240. Menousek testified he made about $500 worth of repairs on the car. There is no other evidence of itemization and actual cost of the repairs. Absent any specific evidence of the amount Menousek spent and the nature of the repairs, we cannot grant the desired relief.

The judgment of the District Court is affirmed.

AFFIRMED.