HARVEY A. PLUMMER, APPELLANT, v. NATIONAL LEASING CORPORATION ET AL., APPELLEES.

114 N. W. 2d 21

Filed March 30, 1962. No. 35079.

*Robert L. Gilbert,* for appellant.

*Lovell & Raymond* and *Holtorf, Hansen & Fitzke,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action in equity brought by Harvey A. Plummer, hereinafter referred to as plaintiff, against National Leasing Corporation and Earl Houk, defendants. Earl Houk is the president of National Leasing Corporation. No evidence was adduced which could even suggest personal liability. If there is liability, it will be that of the National Leasing Corporation. The purpose of the action is to declare a lease agreement to be a loan transaction and to be null and void as being usurious.

Plaintiff was the owner of a 1958 Diamond T diesel truck and a 35-foot 1956 Dorsey van, both of which were purchased in 1957. The truck was purchased from Western Motor Truck, Inc., hereinafter referred to as Western Motor, and was financed by Universal C.I.T. Credit Corporation of Cheyenne, Wyoming, hereinafter referred to as C.I.T. In September of 1959 plaintiff was indebted to Western Motor in the amount of $502.39 for repairs. He was also delinquent on his C.I.T. mortgage, and owed some money to the Gering National Bank. About the middle of September he talked with Fred J. Schoenrock, hereinafter referred to as Schoenrock, president of Western Motor, about the advisability and possibility of refinancing. Schoenrock told him that he thought it would be possible to borrow $11,000 on the truck and trailer at Nebraska Securities. About September 28, 1959, plaintiff told Schoenrock he would refinance if Schoenrock "could get the money at Nebraska

Securities." Schoenrock called the representative of Nebraska Securities, but was unable to contact him at that time. Schoenrock then told plaintiff that he was sure the Nebraska Securities would make the loan and plaintiff signed a blank power of attorney to enable Schoenrock to make the loan for him. Plaintiff testified he next saw Schoenrock about the 8th of October 1959, and Schoenrock told him that it was not possible to get the money from Nebraska Securities but that Schoenrock had another deal that was just as good with National Leasing Corporation. The plaintiff and Schoenrock went over the papers which had been prepared, and plaintiff was not satisfied with some of the provisions. Schoenrock then "said he would get them made over and he would take care of all of it." Schoenrock told him Houk, the president of National Leasing Corporation, was out of town but that the papers would be ready when plaintiff next returned to Scottsbluff, and that everything would be the same as if Nebraska Securities were doing the refinancing. Plaintiff further testified Schoenrock told him that the title would be put in National Leasing Corporation for 18 months, and would then be put back in his name.

It is the plaintiff's testimony that he returned to Scottsbluff on the 14th or 15th of October 1959, at which time the lease agreement was signed by him and the agreement to resell was given to him. Schoenrock accounted for the $11,000, and gave him a Western Motor check for $465.46, representing the balance remaining after the Western Motor had deducted its repair bill, and paid the balance due to the Gering National Bank and the C.I.T. After receiving this check, plaintiff had the loss-payable clause on the truck insurance changed to National Leasing Corporation.

The exhibits indicate that C.I.T. on October 8, 1959, noted a lien discharge on the certificate of title to the truck, and that under date of October 9, the truck and trailer were transferred to Western Motor by Schoen-

rock's bookkeeper by means of the power of attorney. The Western Motor purchase journal shows the equipment as being purchased from plaintiff for $11,000 and a sale to National Leasing Corporation under date of October 9, 1959, for $11,000. The check from National Leasing Corporation to Western Motor is dated October 12, 1959. Plaintiff's testimony is that the truck and trailer were worth $18,500 at this time.

The applications for new certificates of title on the equipment were made for the National Leasing Corporation by F. J. Schoenrock. These applications were dated October 9, 1959. New certificates of title were issued October 13, 1959.

The lease agreement, dated October 10, 1959, and signed for National Leasing Corporation by its president, Earl Houk, and by plaintiff personally, purports to lease the equipment to plaintiff for a rental payment of $540.84 per month for 24 months, with the first payment due November 10, 1959. The agreement provides that if the monthly payments are not made when due, they shall draw 9 percent interest. Plaintiff is required to pay all maintenance costs and all taxes, to insure the equipment, and to furnish lessor with a loss-payable insurance certificate. Lessor is given the right to take immediate possession if plaintiff defaults.

Exhibit No. 3, which plaintiff testified was delivered to him when he signed the lease agreement, is a letter dated October 10, 1959, and is as follows:

"Harvey A. Plummer
1710 6th
Gering Nebraska
"Dear Mr. Plummer:

"Without varing, (varying) or waiving any of the terms, conditions or agreements of our LEASE-RENTAL AGREEMENT executed on October 10, 1959 we are pleased to inform you that if after April 15, 1961 and after you have paid $9,735.12 (Nine Thousand Seven Hundred Thirty-five & 12/100 dollars) on the LEASE

RENTAL AGREEMENT you wish to purchase the equipment herein described:

"1-1958 MODEL 95ONT-SLHD DIAMOND T TRUCK TRACTOR SERIAL NUMBER 95ONT0053-MOTOR NUMBER NT 0-189632

"1-1956 DORSEY INSULLATED (INSULATED) PRODUCE VAN MODEL NUMBER SCT18-SERIAL NUMBER 29818

"We will sell the equipment to you for the sum of $3,245.04 (Three thousand two hundred forty-five and 04/100 dollars) plus any and all State, City, County or Federal Taxes applicable to such sales.

"You may pay the above amount by making 6 (six) payments of $540.84 (Five hundred forty & 84/100 dollars) per month for 6 (six) consecutive months without an interest charge. The first payment to be made on May 10, 1961 and the following payments to be due and payable on the 10th of the following months thereafter until the total amount is paid.

"Yours very truly,
"NATIONAL LEASING
CORPORATION
EARL HOUK (signed)
"Earl Houk, President"

Plaintiff made payments of $540.84 each month from November 1959 through July 1960, or nine payments. This action was filed the next month on August 23, 1960.

The plaintiff did not personally talk to or deal with the National Leasing Corporation, with Earl Houk its president, or any representative of the National Leasing Corporation, unless Schoenrock should be considered to be such representative. As we view the record, unless plaintiff has adduced sufficient evidence to establish the existence of an agency relationship between Schoenrock and National Leasing Corporation, there has been a failure of proof, and the motion to dismiss was properly sustained.

This action was dismissed at the close of the plain-

tiff's evidence. Under these circumstances, the record must be considered in the light of whether or not a cause of action for the relief prayed has been proved. For this purpose, the court must accept as true the evidence of the plaintiff and any reasonable conclusions deducible from it. We said in Armbruster v. Stanton-Pilger Drainage Dist., 165 Neb. 459, 86 N. W. 2d 56: "If a defendant in an action in equity moves at the close of the evidence of the plaintiff for a dismissal of the action for want of proof to support a judgment, he admits the truth of the evidence and any reasonable conclusions deducible from it."

The underlying rule of the law of agency is that the party dealing with the agent must be able to trace the authority on which he relies back to some word or deed of the principal. See Rodine v. Iowa Home Mutual Cas. Co., 171 Neb. 263, 106 N. W. 2d 391.

The transfer of plaintiff's truck and trailer were accomplished by the power of attorney which plaintiff gave to Schoenrock for the purpose of enabling Schoenrock to make refinancing arrangements for him. There can be no question but that Schoenrock was plaintiff's agent for that purpose.

Plaintiff complains that he did not instruct Schoenrock to assign the certificates to Western Motors. If Schoenrock exceeded his authority, which we do not need to decide, plaintiff, by giving him a blank power of attorney, enabled him to do so. In the absence of a finding that Schoenrock was also an agent for National Leasing Corporation, we must apply the rule that where one of two innocent persons must suffer a loss occasioned by the wrongful act of a third person, the one who made it possible for the third person to commit the act should bear the loss. Federal Land Bank v. Worley, 135 Neb. 493, 282 N. W. 476.

There is also a rule of law that a principal who accepts the benefits of a contract executed in his behalf by an agent is chargeable with the instrumentalities em-

ployed by the latter in procuring it. See McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1. Plaintiff knew that title had been transferred and operated under the lease for 10 months before bringing this action.

Certainly the fact that plaintiff designated Schoenrock as an agent to refinance his truck and trailer and to discharge certain indebtedness does not make the conversations between plaintiff and his agent binding upon National Leasing Corporation so as to enable plaintiff to establish a prima facie case on a usurious loan. Plaintiff did not call Schoenrock. There is not one iota of testimony as to what transpired in any dealing in this matter between Schoenrock and representatives of National Leasing Corporation at any time, either before, during, or after the transactions.

Plaintiff himself did not talk to any representative of the National Leasing Corporation until January of 1960, and then the conversation merely concerned the licensing of the truck. It is the plaintiff's responsibility to produce competent evidence to establish the existence of an agency relationship between Schoenrock and National Leasing Corporation before the conversations referred to could be admissible.

In the absence of the existence of a relationship from which authority to act for another may be derived, the admission of one person is not binding on another. Accordingly, a party cannot put the declarations of his own agent in evidence, since such declarations do not bind the other party in the absence of their knowledge and consent. 31 C. J. S., Evidence, § 342, p. 1112.

The only evidence produced by the plaintiff which could in the least be claimed to infer an agency relationship is the fact that Schoenrock, to obtain certificates of title for National Leasing Corporation, signed the applications for certificates of title "National Leasing Corporation by F. J. Schoenrock," without any further explanation. This isolated act is not alone sufficient to

establish that Schoenrock had been the agent of National Leasing Corporation rather than the plaintiff in the transactions between them.

Apparent or ostensible authority or agency for which a principal may be liable must be traceable to him and cannot be established by the acts, declarations, or conduct of the agent. Rodine v. Iowa Home Mutual Cas. Co., 171 Neb. 263, 106 N. W. 2d 391.

Defendants, at every stage, objected to the admission of plaintiff's conversations with Schoenrock. At the conclusion of the plaintiff's case, defendants moved to strike all of plaintiff's evidence relative to these conversations. The objections were proper. The motion should have been sustained. This point is decisive and there is no need to discuss the other issues raised. Without Schoenrock's testimony there is not even a scintilla of evidence to establish that the transaction was other than it purports to be, a sale to Western Motors, a sale by Western Motors to National Leasing Corporation, and a leasing transaction between National Leasing Corporation and the plaintiff.

For the reasons specified above, the motion to dismiss at the close of plaintiff's evidence was properly sustained. The judgment is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.