THE FIRST NATIONAL BANK AND TRUST COMPANY OF FREMONT, FREMONT, NEBRASKA, APPELLANT, V. VERNOR L. HUGHES AND DIANA L. HUGHES, HUSBAND AND WIFE, APPELLEES.

332 N.W.2d 674

Filed April 15, 1983. No. 82-127.

Sidner, Svoboda, Schilke, Wiseman, Thomsen & Holtorf, for appellant.

Jon S. Reid and James D. Benak of Kennedy, Holland, DeLacy & Svoboda, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

First National Bank and Trust Company of Fremont, plaintiff in the trial court, appeals from the dismissal of its petition seeking deficiency judgments against the defendants-appellees, Vernor L. Hughes and Diana L. Hughes. We affirm.

First National Bank contends as error (1) the finding that the notice it provided for a private sale of collateral was insufficient to support a deficiency judgment and (2) the finding that a creditor seeking a deficiency judgment must comply with Neb. U.C.C. § 9-504 (Reissue 1980) notice requirements for each sale when the collateral at issue is sold in two or more separate private sales.

This action under the Nebraska Uniform Commercial Code was one at law, *Koperski v. Husker Dodge, Inc.,* 208 Neb. 29, 302 N.W.2d 655 (1981), tried without a jury. The trial court sustained the Hugheses' motions for dismissal at the close of First National Bank's evidence. In that posture of the case we must treat as admitted the truth of all material and relevant evidence favorable to First National Bank, and it is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom. *Plummer v. National Leasing Corp.,* 173 Neb. 557, 114 N.W.2d 21 (1962). See, also, *Flakus v. Schug,* 213 Neb. 491, 329 N.W.2d 859 (1983).

At the relevant time Vernor L. Hughes was president of Central Auto & Truck Supply, Inc., a corporation. Diana L. Hughes was its secretary. On or about October 23, 1978, First National loaned Central Auto $57,000. The loan was evidenced by a promissory note and by a security agreement tying the loan to the security of the assets of Central Auto. Each of these documents was executed by Central Auto through Mr. Hughes as its president. On the same date, Mr. and Mrs. Hughes both executed and delivered to First National a personal guaranty for the above-described indebtedness of Central Auto. Default subsequently occurred and Central Auto later filed a bankruptcy proceeding. The trustee in bankruptcy abandoned the secured assets of Central Auto, and First National obtained possession of them. On April 1, 1981, First National sent a letter reading as follows to the Hugheses' residence:

"Mr. Venor [sic] Hughes, President

"Central Auto & Truck Supply

"1558 East 5th

"Fremont, NE. 68025

"RE:  Loan #869930
        Collateral:  Financing Statement 5-9-74

"Dear Mr. Hughes:

"This is to notify you that, in connection with the repossession of the above collateral involved in the abovee [sic] account, you may redeem said collateral and terminate the contract relating thereto by payment of $51,417.90 plus interest and expenses any time prior to the sale of said collateral on the date designated below. It is possible for this sum to increase should further expenses of any nature be incurred by our bank.

"In the event you are not able to fully redeem the collateral or make suitable arrangements for redemption, the collateral will be sold at private sale on or after April 10, 1981 at the present place of

storage which is 245 East 5th St., and First National Bank & Trust Company of Fremont.

"Local, State and Federal laws permitting, you will be held liable for any deficiency declared owing after disposal of this collateral."

The corporate inventory and exhaust display racks were sold by private sale on April 10, 1981. On April 14, 1981, again by private sale, First National sold a 1973 pickup truck. On April 21, 1981, a pegboard and four metal shelves were sold by private sale. A final private sale occurred on May 22, 1981, when a 1975 Plymouth station wagon owned by the corporation was sold. On October 15, 1981, First National sent a letter addressed to Vernor L. Hughes and Diana L. Hughes, as well as Central Auto & Truck Supply, in care of Vernor L. Hughes, president, giving notice of a public sale of the remaining collateral. That notice made specific reference to the personal guaranty executed by the Hugheses.

Section 9-504(1) provides that after default a secured party may sell the collateral. Section 9-504(3) provides as follows: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom

the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

Each guarantor is entitled to notice as a "debtor" under the definition of such in Neb. U.C.C. § 9-105(1)(d) (Reissue 1980) as one "who owes payment or other performance of the obligation secured . . . ." The April 1 notice in this case makes no reference to the guaranty; indeed, it makes reference only to the "Financing Statement 5-9-74," in fact a security agreement dated May 24, 1974, a document which was signed individually by neither Mr. Hughes nor Mrs. Hughes. In that regard the notice fails to apprise either Mr. or Mrs. Hughes that a personal deficiency judgment might be sought against any one of them in his or her capacity as guarantor of the corporation's debt. Secondly, as between Mr. Hughes and Central Auto, the matter as to whom the notice was sent is ambiguous. The interest of Mr. Hughes in this context conflicts with that of the corporation. It cannot be said that the notice, as addressed, unmistakably advises Mr. Hughes personally that he is the "you" who may be held "liable for any deficiency declared owing after disposal of this collateral." To assume that Mr. Hughes would know that a deficiency could not be obtained against the bankrupt Central Auto is to assume something not supported by the record before us. Although the statement that ambiguous language is to be construed against the drafter of the language is generally applied in the case of insurance policies, *Niemeyer v. Estate of Tichota,* 191 Neb. 484, 215 N.W.2d 885 (1974), the reasoning behind that rule is

equally applicable to notices of the nature involved here.

It is the rule in this jurisdiction that compliance with the notice provisions of the Uniform Commercial Code is a condition precedent to the right of a creditor to recover a deficiency judgment. *First Nat. Bank & Trust Co. v. Hermann,* 205 Neb. 169, 286 N.W.2d 750 (1980); *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.,* 196 Neb. 398, 243 N.W.2d 745 (1976); *Bank of Gering v. Glover,* 192 Neb. 575, 223 N.W.2d 56 (1974). The failure to give the requisite notice is an absolute bar to recovery. *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co., supra*; *Citizens State Bank v. Sparks,* 202 Neb. 661, 276 N.W.2d 661 (1979). As we said in *Bank of Gering v. Glover, supra* at 580, 223 N.W.2d at 59: "If the creditor wishes a deficiency judgment, he must obey the law. If he does not obey the law he cannot secure a deficiency judgment."

Having determined that there was no notice to the guarantors against whom the deficiency judgments are sought, we need not consider First National Bank's remaining assignment of error concerning whether a separate notice is required for each private sale.

The trial court was correct in dismissing First National Bank's petition at the close of its evidence.

AFFIRMED.

BOSLAUGH, J., dissenting in part.

In my opinion, the notice to Vernor L. Hughes was sufficient.

McCOWN, J., and COLWELL, D.J., Retired, join in this dissent.